## PORTER, EXECUTRIX, ET AL. v. COMMISSIONER OF INTERNAL REVENUE.

No. 466. Argued February 9, 1933.—Decided March 13, 1933.

*Mr. Walter E. Hope,* with whom *Mr. Edward N. Perkins* was on the brief, for petitioners.

*Mr. Erwin N. Griswold,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist,* and *Mr. Sewall Key* were on the brief, for respondent.

MR. JUSTICE BUTLER delivered the opinion of the Court.

The question presented is whether, for the purpose of determining the tax liability of the estate of the deceased, § 302 (d) of the Revenue Act of 1926 [1] requires that there shall be included in the value of the gross estate certain bonds that he had transferred in trust.

October 18, 1918, and again on February 1, 1919, decedent transferred to the Bankers Trust Company certain bonds for the benefit of his daughter and her son. Contemporaneously he made similar transfers of bonds to the same trustee for the benefit of his son and his son's daughter. November 27, 1926, in order to make provision for two children of his daughter born after the creation of these trusts, he sent the trust company letters purporting to revoke the trusts of which she was a beneficiary, to terminate the interest of all persons therein and to direct it to deliver the principal and income to itself as trustee according to a new deed then delivered. Each of the five trust agreements included provisions governing the management, investment, and disposition of principal and income, and contained a paragraph reserving to the donor power at any time to alter or modify the indenture and any or all of the trusts in any manner but expressly excepting any change in favor of himself or his estate. [2]

---

[1] 44 Stat. 71. 26 U. S. C., § 1094 (d).

[2] Paragraph tenth in each of the transfers is as follows:

" Notwithstanding anything to the contrary herein contained, the Donor at any time during the continuance of the trust herein provided for may, by instrument in writing executed and acknowledged or proved by him in the manner required for a deed of real estate (so as to enable such deed to be recorded in the State of New York) delivered to the trustee, or its successor, modify or alter in any

Deceased died November 30, 1926; The Commissioner of Internal Revenue included in the gross estate the value of the property described in the last deed and petitioners sought redetermination. The Board of Tax Appeals, because of the reserved power to alter and amend, held § 302 (d) applied, and included the corpus of all the trusts in the gross estate. 23 B. T. A. 1016. The Circuit Court of Appeals affirmed that ruling. 60 F. (2d) 673. Its decision being in conflict with that of the Circuit Court of Appeals for the First Circuit in *Brady* v. *Ham*, 45 F. (2d) 454, and that of the Court of Appeals of the District of Columbia in *Cover* v. *Burnet*, 60 App. D. C. 303; 53 F. (2d) 915, we granted a writ of certiorari. 287 U. S. 591.

By the trust agreements, decedent divested himself of all interest in the bonds and, subject only to the reserved power, transferred full title to the trustee and beneficiaries. The reservation is broad; evidently he intended to be free at any time and from time to time to alter or modify the disposition of the property as he might see fit, subject to the restriction above mentioned. The power

manner this indenture, and any or all of the trusts then existing and the limitations and estates and interest in property hereby created and provided for subsequent to such trusts; and in case of such modification or alteration said instrument shall direct the revised disposition to be made of the trust fund or the income thereof, or that part of the trust fund or the income thereof affected by such modification or alteration, and upon the delivery of such instrument to the Trustee or its successor said instrument shall take effect according to its provisions, and the Trustee or its successors shall make and execute all such instruments, if any, and make such conveyance, transfers or deliveries of property as may be necessary or proper in order to carry the same into effect, and no one, born or unborn, shall have any right, interest, or estate under this indenture except subject to the proper modification or alteration thereof; but this power to modify or alter is not intended and shall not be construed to include the right to the Donor to make such modification or alteration in his own favor or in favor of his estate, but shall apply only so far as the interest of third parties may be concerned." ·

did not amount to an estate or interest in the property. It was much like, and for the purposes of this case may be deemed the substantial equivalent of, a general power of appointment by will. Cf. *United States* v. *Field*, 255 U. S. 257, 263. *Patterson & Co.* v. *Lawrence*, 83 Ga. 703, 707; 10 S. E. 355. *Clapp* v. *Ingraham*, 126 Mass. 200.

The Act, § 301 (a), imposes a tax " upon the transfer of the net estate of every decedent." The net estate as there used does not mean an amount to be ascertained as such under any general rule of law or under statutes governing the administration of estates, but is the gross estate as specifically defined in § 302 less deductions permitted by § 303. The former section declares that " the value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— (a) To the extent of the interest therein of the decedent at the time of his death."

(b) To the extent of any interest therein of the surviving spouse as or in lieu of dower or curtesy. (c) To the extent of any interest therein of which the decedent has at any time made a transfer by trust or otherwise in contemplation of or intended to take effect in possession or enjoyment at or after his death.

(d) " To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke. . . ."

(e) To the extent of the interest therein held by decedent as a joint tenant or as a tenant by the entirety. (f) To the extent of any property passing under a general power of appointment exercised by the decedent by will or by deed in contemplation of or intended to take effect in possession or enjoyment at or after death. (g)

To the extent of the amount of life insurance receivable as specified. Subdivision (h) requires the interests defined in (b) to (g) inclusive to be included whether transfer was made before or after the passage of the Act.

Petitioners contend that the only thing taxed is the transfer of the net estate at death, and that property in which the decedent then held no interest or power of enjoyment must be excluded. They rely on *Reinecke* v. *Northern Trust Co.,* 278 U. S. 339. But that case is not in point. It involved seven trusts created by the decedent. Two were held taxable because subject to a power of revocation in him alone. In each of the others he reserved power to alter, change or modify, to be exercised in four by joint action of himself and a single beneficiary and in the remaining one by himself and a majority of the beneficiaries acting jointly. As the title was put beyond his control, we held these transfers not taxable. And petitioners assume, as held in *White* v. *Erskine,* 47 F. (2d) 1014, that (a) is a limitation upon (d) and argue that the gross estate includes property only to the extent of the " interest therein of the decedent at the time of his death." and that, as before his death he had divested himself of all title, the property so transferred is not to be included in the gross estate. But the construction thus taken for granted cannot be sustained. Subdivision (a) does not in any way refer to or purport to modify (d) and, in view of the familiar rule that tax laws are to be construed liberally in favor of taxpayers, it cannot be said that, if it stood alone, (a) would extend to the transfers brought into the gross estate by (d). *United States* v. *Field, supra,* 264. Moreover, Congress has progressively expanded the bases for such taxation. Comparison of § 302 with corresponding provisions of earlier Acts warrants the conclusion that (d) is not a mere specification of something covered by (a) but that it covers something not included therein. Cf. *Chase National Bank* v.

*United States,* 278 U. S. 327. *Tyler* v. *United States,* 281 U. S. 497. *Gwinn* v. *Commissioner,* 287 U. S. 224. *Burnet* v. *Guggenheim, ante,* p. 280.

The net estate upon the transfer of which the tax is imposed, is not limited to property that passes from decedent at death. Subdivision (d) requires to be included in the calculation all property previously transferred by decedent, the enjoyment of which remains at the time of his death subject to any change by the exertion of a power by himself alone or in conjunction with another. Petitioner argues that, as decedent was without power to revoke the transfers or to alter or modify the trusts in favor of himself or his estate, the property is not covered by subdivision (d). But the disjunctive use of the words " alter," " modify " and " amend " negatives that contention. We find nothing in the context or in the policy evidenced by this and prior estate tax laws or in the legislative history of subdivision (d) to suggest that conjunctive use of these words was intended, or that " alter " and " modify " were used as equivalents of " revoke " or are to be understood in other than their usual meanings. We need not consider whether every change, however slight or trivial, would be within the meaning of the clause. Here the donor retained until his death power enough to enable him to make a complete revision of all that he had done in respect of the creation of the trusts even to the extent of taking the property from the trustees and beneficiaries named and transferring it absolutely or in trust for the benefit of others. So far as concerns the tax here involved, there is no difference in principle between a transfer subject to such changes and one that is revocable. The transfers under consideration are undoubtedly covered by subdivision (d).

Petitioners contend that so construed § 302 (d) is repugnant to the due process clause of the Fifth Amendment. They insist, and we assume, that the measures

444

taken by means of decedent's letter to the trustee and the new deed of November 27, 1926, operated merely to alter and modify but did not supersede the earlier trusts made for the benefit of his daughter and her son. They maintain that inclusion of the transfers in question would be to measure decedent's tax by property belonging to others, a thing condemned in *Heiner* v. *Donnan,* 285 U. S. 312, and *Hoeper* v. *Tax Commission,* 284 U. S. 206, and would be to tax gifts *inter vivos* that were fully consummated prior to the enactment of subdivision (d) and therefore would be confiscatory under *Nichols* v. *Coolidge,* 274 U. S. 531, and *Heiner* v. *Donnan, supra.*

They treat as without significance the power the donor reserved unto himself alone and ground all their arguments upon the fact that deceased, prior to such enactment, completely divested himself of title without power of revocation. It is true that the power reserved was not absolute as in the transfer considered in *Burnet* v. *Guggenheim, supra,* in which this court, in the absence of any provision corresponding to subdivision (d), held that the donor's termination of the power amounted to a transfer by gift within the meaning of § 319 of the Revenue Act of 1924, 43 Stat. 313. But the reservation here may not be ignored, for, while subject to the specified limitation, it made the settlor dominant in respect of other dispositions of both corpus and income. His death terminated that control, ended the possibility of any change by him, and was, in respect of title to the property in question, the source of valuable assurance passing from the dead to the living. That is the event on which Congress based the inclusion of property so transferred in the gross estate as a step in the calculation to ascertain the amount of what in § 301 is called the net estate. Thus was reached what it reasonably might deem a substitute for testamentary disposition. *United States* v. *Wells,* 283 U. S. 102, 116. There is no doubt as to the power of Congress so to do.

*Reinecke* v. *Northern Trust Co., supra. Chase National Bank* v. *United States, supra. Tyler* v. *United States, supra,* 502. *Klein* v. *United States,* 283 U. S. 231. *Gwinn* v. *Commissioner,* 287 U. S. 224.

*Judgment affirmed.*

Mr. Justice Cardozo concurs in the result.