**DORT v. HELVERING, Commissioner of Internal Revenue.**

**HELVERING, Commissioner of Internal Revenue, v. DORT.**

**Nos. 5968, 5969.**

Court of Appeals of the District of Columbia.

Argued Jan. 12, 1934.

Decided Feb. 26, 1934.

Rehearing Denied March 19, 1934.

John C. Evans, of Detroit, Mich., and William P. Smith, of Washington, D. C., for administratrix.

Sewall Key, J. Louis Monarch, Francis H. Horan, Andrew D. Sharpe, E. Barrett Prettyman, C. M. Charest, and Shelby S. Faulkner, all of Washington, D. C., for Commissioner of Internal Revenue.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

J. Dallas Dort died May 17, 1925. A little more than two years prior to his death, he created seven trusts hereinafter referred to as trusts A, B, C, D, E, F, and G. Except as to the beneficiary, trusts A, B, C, and D were identical in all material respects. Trust E contained the same provisions as trusts A, B, C, and D, except that the life beneficiary therein had the power of appointment by will as to the corpus of the trust. Trust F also contained the same provisions as trusts A, B, C, and D, except that by amendment the grantor himself received no income, the same being paid for life to the beneficiary. If the beneficiary survived the grantor, the corpus was to go to the beneficiary's children or heirs. Trust G was like trust F, except that there was no provision whereby the corpus was to revert to the grantor if the beneficiary predeceased him.

It was stipulated that none of the transfers was made in contemplation of death, that none of the property was administered as part of the decedent's estate, and that all of the named beneficiaries survived the grantor.

Trust A is as follows:

"Know all men by these presents that I, J. Dallas Dort, of the city of Flint, Michigan, the grantor for the consideration of one dollar and other good and sufficient consid-erations received to my full satisfaction, of the Union Trust Company, Detroit, Michigan, a corporation duly created and existing under the laws of the State of Michigan, do give, grant, bargain, sell, and convey unto the said grantee and its successors, in trust, for the uses and purposes hereinafter set forth, the following-described bonds and securities, to wit: * * *

"Said grantor hereby conveys to said grantee all of said bonds and securities subject to all the conditions herein contained; to have and to hold the above-described bonds and securities unto the said grantee and its successors, in trust, for the uses, intents, and purposes hereinafter expressed and declared of and concerning the same, to wit:

"Whereas I, the maker of this instrument, am the owner of the bonds and securities hereby conveyed, having full power to dispose of same as I see fit; and

"Whereas, it is my wish and desire to provide a moderate income for my daughter, Dorothy Dort Fauntleroy, who is named as the beneficiary herein, and to protect her against all and every misfortune that might occur to her, to the end that she may personally receive the income herein provided together with the other benefits provided for in the trust;

"Now, therefore, this conveyance is made to the grantee herein as trustee, and its successors, upon the express terms and conditions hereinafter set forth. This trust shall remain and be carried out as herein directed, and should it be deemed advisable to make any change or changes therein during my lifetime, such change or changes if any, must be in writing and attached to this instrument and must have the signature of myself and said grantee; and in that event such change or changes shall become a part of this instrument. I reserve the right however, during my lifetime, with the consent of the beneficiary, to revoke and cancel this trust, and require a reconveyance to me of the property included herein.

"The trustee is hereby authorized to collect all interest or other proceeds of the said bonds and securities as it shall become due and to pay therefrom all expense connected with the trust, and such expense is to be one percent (1%) on the principal of the trust fund, to be paid at the time such trust fund is accepted, and also a charge of two and one half percent (2½%) upon the income derived annually from such trust fund, and which sum is agreed to between the parties hereto as full compensation to the trustee,

and the net income thereof, after payment of all such expense, shall be paid to me during my life on the first day of June and December of each year.

"In the event of my death before my said beneficiary arrives at the age of thirty years which will be on the fifteenth day of September, A. D. 1923, my said trustee shall immediately deliver to her five thousand dollars (par value) of said bonds and securities and thereafter pay to her at the times in each year aforesaid the net income from the balance of the said bonds and securities in its hands until she shall attain the age of thirty years—if she attains that age—at which time my said trustee shall deliver to her twenty thousand dollars (par value) more of said bonds and securities, and the balance of said bonds and securities shall be held by my said trustee and the income thereof paid to her during her lifetime at such times in each year as is herein provided for the payment of such income.

"In the event of my death after my said beneficiary arrives at the age of thirty years, then immediately after my death my said trustee shall deliver to my said beneficiary twenty-five thousand dollars (par value) of said bonds and securities and the balance of said bonds and securities shall be held by it and the income thereof paid to her during her lifetime at such times in each year as is above provided for the payment of such income.

"At the death of my said beneficiary provided she survives me, all bonds and securities at that time in the hands of my said trustee in pursuance of the trust hereby created, shall be paid over and delivered in equal shares to her children then living and to the children of any deceased child or children by right of representation, and if at that time there are no children nor grandchildren of hers surviving her, then said bonds and securities shall be paid over and delivered to her heirs in the same manner as if she had died intestate and said bonds and securities were a part of her estate.

"In the case of the death of my said beneficiary before my death, all bonds and securities in the hands of my said trustee in pursuance of the trust hereby created, shall be delivered to me.

"If at any time before my death it shall be deemed advisable by me that any such bonds or securities shall be sold, then in that case the same shall be sold by my said trustee. The proceeds from the sale of any unmatured bonds or securities sold before my death and the proceeds from the payment of any bonds or securities which mature before my death, shall be reinvested by my said trustee in other bonds or securities approved by me.

"If after my death and before this trust is fully executed, it is deemed advisable by my said trustee that any unmatured bonds or securities held by it under this agreement shall be sold, then in that case the same shall be sold by my said trustee and the proceeds from such sale shall be invested by my said trustee in bonds issued by counties or by cities of not less than fifteen hundred inhabitants, the legality of which shall have been approved by a reputable attorney, and no such bonds shall be purchased where the authority to issue the same has not been given by the requisite vote of the people of the municipality issuing them or where the indebtedness of the municipality issuing the bonds exceeds 5% of its assessed valuation.

"The proceeds from the payment of all bonds and securities maturing after my death and before this trust shall be fully executed, shall be invested in bonds of the kind and quality provided herein for the investment of the proceeds from the sale of unmatured bonds or securities.

"It is hereby expressly provided that the income to be derived from said bonds and securities and to be paid as provided by this instrument, shall be unalienable until actually paid to the party or parties entitled thereto, and such party or parties shall not have the right or power to encumber in any way or assign the same before it is actually received; that the income so arising shall in nowise be subject to be reached by the creditors of any of said parties until actually paid over, and the trustee shall have no authority or power to make any payments of said income, except at the times they become due and then only directly to the person entitled to receive the same, and the trustee shall receive no other receipt, voucher, or order except for the money actually paid to the party entitled thereto.

"In the event of the trustee herein named being, for any reason, unable to carry out the terms of this instrument and perform its duties as such trustee, then the court of record of original jurisdiction in Wayne County, Michigan, having jurisdiction over such matters, shall appoint a successor, who shall be some bank or trust company having a paid-up capital of at least five hundred thousand dollars, which company, upon receiving such appointment, shall be qualified and vest-

ed with all the powers of the trustee herein named, and shall carry out said trust to its final termination, in accordance with the terms and provisions herein provided, application for such appointment to be made to such court by any of the parties interested. * * * "

The Commissioner included the aggregate value of the corpus of all the trusts in determining the gross estate of the grantor for estate tax purposes, resulting in the deficiencies here involved. The Board sustained the Commissioner's determination as to trusts A, B, C, D, E, and F, but held that the corpus of trust G should not be included in the gross estate. In the case of trust G, the Commissioner appeals. In the others, the administratrix of the estate of the grantor appeals. The appeals have been consolidated by agreement.

The basis of the decision of the Board as to the first six trusts was that these were intended to take effect at or after the death of the grantor within the meaning of section 302 (c) of the Revenue Act of 1924; as to the seventh, that it was not within the meaning of section 302 (c) or 302 (d).

Section 302 (c), 43 Stat. 304 (26 USCA § 1094 note) provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, in contemplation of or intended to take effect in possession or enjoyment at or after his death. * * * "

The Board held that as to trusts A to F there was occasioned by the grantor's death a transfer of an interest in the trust property, and that his death was the occasion upon which the interest of the respective beneficiaries became effective in possession or enjoyment. As to this the Board said: "While this case is unlike Klein v. United States, 283 U. S. 231, 51 S. Ct. 398, 75 L. Ed. 996, in which the fee and remainder had not been transferred but was withheld until the grantor's death, the same statutory provision is none the less applicable here, because there was likewise a retention by the grantor of an interest in the property by virtue of which its possession and enjoyment were withheld from any other until his death. It was only then that the transfer of possession or enjoy-

ment of the corpus could take effect; and this and not the transfer of the fee or title determines the inclusion in the gross estate. It is true that by the creation of the trusts, and thus prior to decedent's death, the several beneficiaries acquired an interest; but such interest was no different from or greater than the interest retained by the decedent. Each was a potential survivor of the other, and neither could possess or enjoy except by such survivorship. Whatever such interest may be called, the decedent's death was the occasion upon which it became effective in possession as to the beneficiary."

The foundation of the Board's decision is that clause of the trust in which the grantor provided: "In the case of the death of my said beneficiary before my death, all bonds and securities in the hands of my said trustee in pursuance of the trust hereby created, shall be delivered to me."

The taxpayer, however, insists that neither the quoted clause nor any other part of the trust instrument may properly be construed as reserving to the grantor any rights or benefits which would pass at his death, and relies upon the cases of Reinecke v. Northern Trust Company, May v. Heiner, and McCormick v. Burnet, Commissioner, reported in 278 U. S. 339, 49 S. Ct. 123, 124, 73 L. Ed. 410, 66 A. L. R. 397, 281 U. S. 238, 50 S. Ct. 286, 74 L. Ed. 826, 67 A. L. R. 1244, and 283 U. S. 784, 51 S. Ct. 343, 75 L. Ed. 1413, respectively. In support of this view the taxpayer says that each of the trusts was an inter vivos transfer, complete and fixed so far as the grantor was concerned; that by the terms of each there was an absolute transfer of the property, subject only to a possibility of reverter to the grantor if the beneficiary died before him. Taxpayer's position in brief is that the beneficiary of each trust took a vested estate subject only to being divested if the grantor survived the beneficiary.

The question is one of great interest and was involved, in part at least, in the very recent case in the Supreme Court of Helvering v. Duke, 54 S. Ct. 95, 78 L. Ed. —, where the trust instrument in question provided as follows: "Should the said Doris Duke die in the lifetime of the said J. B. Duke, this trust shall immediately cease and determine and thereupon all properties of every nature then held in trust under and by virtue of this indenture shall go, revert, and belong to the said J. B. Duke absolutely, and said trustee or his successor as such trustee shall forthwith pay, convey, assign, transfer, and deliver the same to the said J. B. Duke."

In that case the Supreme Court divided equally (eight justices sitting), but in the view we take of this case the correctness of the Board's decision on this question need not be reviewed, because, as we think, another clause found in all seven trusts, is decisive of the case in favor of the government. The clause to which we refer reads as follows: "This trust shall remain and be carried out as herein directed, and should it be deemed advisable to make any change or changes therein during my lifetime, such change or changes, if any, must be in writing and attached to this instrument and must have the signature of myself and said grantee [trustee]; and in that event such change or changes shall become a part of this instrument. I reserve the right, however, during my lifetime, with the consent of the beneficiary, to revoke and cancel this trust, and require a reconveyance to me of the property included herein."

The Board of Tax Appeals construed this clause as not within the provisions of subsection (d). The Commissioner then and now insists it is. In deciding the issue in favor of the taxpayer, the Board said: "We think that the power to change, read in its context, does not include the power to reinvest in the grantor any interest in the trust property, or to shift the essential economic benefit from the beneficiary without his consent."

This conclusion, we think, is incorrect, for, granted the power to *change* does not include the power to *revoke* and *reinvest* the trust property in the grantor, it by no means follows that the power to change is not sufficient to affect a beneficial interest in the trust, and the last and not the first is the test.

Subdivision (d) of section 302 (43 Stat. 304 [26 USCA § 1094 note) provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(d) To the extent of any interest therein of which the decedent has at any time made a transfer, or with respect to which he has at any time created a trust, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke," etc.

The plain language of this subdivision makes its terms apply in the case of every trust where the right is reserved on the part of the grantor to affect the enjoyment of the property transferred by "any change," either by alteration, amendment, or revocation.

We have, therefore, to look to the agreement of transfer to determine whether the grantor has reserved to himself the power to make such a change.

The Board thought the case of Reinecke v. Northern Trust Company, supra, controlling. In that case the grantor had reserved the power "to alter, change or modify the trust" to be exercised by the grantor and the beneficiary acting jointly. This the Supreme Court said was a bootless reservation, since it could only be exercised with the consent of the adverse interest. Consequently, it was held there that the trust had passed from decedent's control. But we do not think the holding in the Reinecke Case in point in this, for there, first of all, the Supreme Court was dealing with another and wholly different section of the Revenue Statute (Revenue Act of 1921, § 402 (c), 42 Stat. 278), and, secondly, because the language of the trusts there and here is not the same. Subdivision (d), with which we are here concerned, is more far reaching than the provisions of the 1921 act, and there is a marked distinction between the property to be included for death tax under its provisions and under the provisions of the former act. This is clearly pointed out by the Supreme Court in the case of Porter v. Commissioner, 288 U. S. 436, 53 S. Ct. 451, 77 L. Ed. 880. There the donor reserved the right to "modify or alter in any manner this indenture, and any or all of the trusts," except by alteration in his own favor or in favor of his estate. Speaking of the applicability of (d) in those circumstances, the Supreme Court said (page 443 of 288 U. S., 53 S. Ct. 451, 453): "The net estate upon the transfer of which the tax is imposed is not limited to property that passes from decedent at death. Subdivision (d) requires to be included in the calculation all property previously transferred by decedent, the enjoyment of which remains at the time of his death subject to any change by the exertion of a power by himself alone or in conjunction with another. Petitioner argues that, as decedent was without power to revoke the transfers or to alter or modify the trusts in favor of himself or his estate, the property is not covered by subdivision (d). But the disjunctive use of the words 'alter,' 'modify,' and 'amend' negatives that contention. We find nothing in the context or in the policy evidenced by this and prior estate tax laws

or in the legislative history of subdivision (d) to suggest that conjunctive use of these words was intended, or that 'alter' and 'modify' were used as equivalents of 'revoke,' or are to be understood in other than their usual meanings. We need not consider whether every change, however slight or trivial, would be within the meaning of the clause. Here the donor retained until his death power enough to enable him to make a complete revision of all that he had done in respect of the creation of the trusts even to the extent of taking the property from the trustees and beneficiaries named and transferring it absolutely or in trust for the benefit of others. So far as concerns the tax here involved, there is no difference in principle between a transfer subject to such changes and one that is revocable. The transfers under consideration are undoubtedly covered by subdivision (d)."

This is a distinct holding that, though the trust agreement may contain no reservation of the power to revoke—indeed, though there shall be an actual prohibition—if nevertheless it contain a right to change the enjoyment, it is within the terms of the act.

This brings us back to the question suggested earlier, namely, whether, in reserving the right "to make any change or changes therein during my lifetime," the grantor here meant only slight or trivial changes or meant to reserve a right to affect the enjoyment of the trust property. Undoubtedly the right to "change" includes the right to alter, and the words used by the grantor are therefore within the precise language of the statute. If the meaning attributable to the words used, however, may be considered as confining the power to matters affecting the mere mechanics of the trust, it is, we think, obvious the provisions of the act would not apply, but, looking at the trust instrument involved in all its provisions, we have reached the conclusion that it is not possible to give the power reserved such a limitation. The language is to make "any change or changes therein during my lifetime." Changes, when made and attested by the signature of the grantor and of the trustee, became part of the instrument. This of itself tends to negative the idea that trivial or merely mechanical changes were in contemplation. The property transferred was as to all but a small part eventually to go to the grandchildren of the grantor. In one of the trusts the life

beneficiary had the power of appointment. Those persons who eventually were to receive the corpus were beneficially concerned, and yet there is no provision anywhere in the trust tending to show that the grantor contemplated obtaining their consent either to the revocation of the trust, or for that matter to any change or alteration in its terms, and yet the language we have several times quoted is altogether consistent with an intention to reserve the right at least in the latter respect, and the language used by him in the trust instrument is broad enough to accomplish this purpose. While it is a fact that, after reserving the right to make any change or changes during lifetime, the grantor further reserves the right to revoke and cancel the trust and retake the property with the consent of the beneficiary, it is clear the beneficiary here mentioned is the named person to whom he had already given a life interest, because he had so expressly stated in declaring the purpose of the trust. But even if it be conceded that the term "beneficiary" includes both the life tenant and the remaindermen, there is nothing in that reservation which, read in conjunction with the previously reserved right to change, would destroy the latter. The right to retake only under the conditions named undoubtedly limits the otherwise unlimited right to change. Hence, as we think, there could be no retaking of the trust property except with the consent of the beneficiary, but it has no other effect than this, and the provisions of subdivision (d) are not confined to cases where the right to complete revocation is reserved. We have, therefore, here a trust in which the donor can only cancel and reinvest the property in himself under certain named conditions, but who may, under the reservation to change, otherwise make such alteration in the disposition of the beneficial interest as he may desire. It is this right which, in our view, brings the instrument within the provisions of subdivision (d), for, as we think, this reservation is sufficient to permit the grantor to change the trust instrument in a way affecting the beneficiaries or the amounts which they might severally receive under it. In other words, it is a power to affect the rights in the trust property. In this view, it is clear that the provision brings the property transferred within the estate of the grantor at his death.

No. 5968 affirmed.

No. 5969 reversed.