## CROSS v. NEE.
### No. 9077.

District Court, W. D. Missouri, W. D.
Jan. 5, 1937.

Watson, Ess, Groner, Barnett & Whittaker, of Kansas City, Mo., for plaintiff.

Maurice M. Milligan, U. S. Dist. Atty., of Kansas City, Mo., for defendant.

REEVES, District Judge.

The question presented is whether for the purpose of determining the tax liability of the estate of the deceased, paragraph "(d)" of section 411, title 26, U.S.C., 26 U.S.C.A. § 411(d), section 302(d) of the Revenue Act of 1926, requires that there shall be included in the value of the gross estate certain property transferred in trust.

The deceased departed this life on March 24, 1931. Prior to that date, to wit, February 23, 1929, he executed certain trust indentures. They were three in number. The Fidelity National Bank & Trust Company was named as trustee in each one. The aggregate amount was $300,000 face value. Each trust involved the transfer of securities in the face amount of $100,000. The beneficiaries under said trust agreements were sons and daughter of the trustor as follows: Walter M. Cross, Jr., a son, Matthew Forbes Cross, a son, Annette Forbes Cross, a daughter.

The only clause requiring construction is paragraph or article "Ninth" of such trust indentures. The same language was used in each agreement and is as follows:

"Ninth: The Trustor during his lifetime shall have the right at any time to modify, amend, alter or change this trust agreement in such manner as he may desire, but the Trustor does not reserve the power to revest in himself title to any part of the corpus of the trust, and the Trustor does not reserve or possess the power to have the interest, income, or dividends of the trust distributed to him or be held or accumulated for future distribution to him and/or applied in any way or manner for his use and/or benefit. All such amendments, alterations and changes which may at any time hereafter be made shall be made in writing and shall be filed with the Trustee. From and after the date of the filing of the same with the Trustee this Trust Agreement shall in the particulars specified in said amendment or amendments be deemed amended, altered and changed in the manner and to the extent as is provided in the amendment or amendments so filed, to the same extent and with like effect as if said amendments, changes and alterations were incorporated in and made a part of this indenture at the time of the execution thereof in lieu of the provisions of this Agreement so modified and changed."

"After the death of the Trustor, Anne H. Cross, Trustor's wife, if she shall survive the Trustor, and after her death, Roy Cross, brother of Trustor, if he shall survive the Trustor, and Anne H. Cross shall have the right to modify, amend, alter or change this Trust Agreement, provided, however, such amendments, alterations and changes so made by Anne H. Cross and/or Roy Cross, shall not jeopardize, impair, destroy or diminish in any manner or particular whatsoever the estate or corpus or income of the trust estate or the estate of the Beneficiary therein, and shall not jeopardize, impair, destroy or diminish the right of the Beneficiary to have and receive the interest, income, benefits and returns of the trust estate and/or the principal or corpus of the trust estate as is provided in this trust indenture. And it is provided further that no such change, alteration or amendment made by any of the parties herein authorized to make such changes, shall increase the duties, obligations and/or liability of the Trustee, except by written instrument which shall be agreed to by the Trustee."

Said section 411, title 26 U.S.C., 26 U.S.C.A. § 411, relates to the subject of computations of tax liability on the estates of residents. It particularly defines what shall constitute the value of the gross estate as a basis for the tax. The language of said section in part and so far as pertinent is as follows:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated— * * *

"(d) *Revocable transfers.* To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke."

1. It will be noted from said article "Ninth" of the trust agreements that the

decedent during his lifetime reserved to himself "the right at any time to modify, amend, alter or change this trust agreement in such manner as he may desire," though he relinquished the power to revest in himself title to any part of the corpus of the estate.

This reserved power "to modify, amend, alter, or change this trust agreement in such manner" as the decedent might desire would enable him at any time during his lifetime to change the economic benefits from the named beneficiaries to any other beneficiary, though definitely excluding himself. The statute as above quoted requires that the estate be augmented to the extent of any transfers "by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power *. * * to alter, amend, or revoke." This section, therefore, was designed to include in the gross estate of a decedent such trusts as may have been created by the decedent in his lifetime and wherein power was retained to alter or amend or revoke the "enjoyment thereof:" Under the trust indentures, the decedent, in his lifetime, could have modified the trust agreements so as to give all of the estate to one of the beneficiaries, or to exclude all the named beneficiaries; or it was within his right and power so to alter the trust agreements as to provide other beneficiaries. In all respects, therefore, such transfers were revocable transfers in so far as the enjoyment of the property was concerned or in respect of the economic benefits.

This identical question was discussed and settled in the case of Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 452, 77 L.Ed. 880. In that case the trustor died November 30, 1926. The Revenue Act had been approved on February 26, 1926 (44 Stat. 9). Such act, therefore, became applicable and fixed the right of assessments for tax purposes upon said estate. Reinecke v. Northern Trust Company, 278 U.S. 339, loc. cit. 345, 49 S.Ct. 123, 124, 73 L.Ed. 410, 66 A.L.R. 397.

In the Porter Case, supra, the defendant on different dates had transferred to the Bankers Trust Company of New York certain bonds or securities for the benefit of a daughter and a son. Other trusts were similarly created during the lifetime of the decedent. In some of such trusts, modifications thereof were made three days before his death. There were five trust agreements in all. Provision was made in each, as in the trust agreements now being considered, for the management, investment, and disposition of both principal and income. There was also, as in this case, a reserve power to the donor or trustor (decedent) to alter or modify the indentures and any or all of the trusts at any time and in any manner, but expressly excepting any change in favor of himself or his estate. In reference thereto, the court said:

"By the trust agreements, decedent divested himself of all interest in the bonds and, subject only to the reserved power, transferred full title to the trustee and beneficiaries."

The identical condition exists in the case now considered.

The court then said in reference to the reserved power:

"The reservation is broad; evidently he intended to be free at any time and from time to time to alter or modify the *disposition* of the property as he might see fit, subject to the restriction above mentioned."

The court particularly pointed out that the power thus reserved to the decedent did not amount to "an estate or interest in the property." Moreover, the court said this was not necessary and that subsection or paragraph "(a)" relating to the subject of decedent's interest ("to the extent of the interest therein of the decedent at the time of his death") did not modify or in any way control said paragraph "(d)" of said section relating to the subject of *"revocable transfers."* The court characterized the latter provision as follows: "It was much like, and for the purposes of this case may be deemed the substantial equivalent of, a general power of appointment by will."

In discussing the Porter Case, 288 U.S. 436, loc. cit. 444, 53 S.Ct. 451, 454, 77 L.Ed. 880, the court finally said in relation to the retained power:

"But the reservation here may not be ignored for, while subject to the specified limitation, it made the settlor dominant in respect of other dispositions of both corpus and income. His death terminated that control, ended the possibility of any change by him, and was, in respect of title to the property in question, the source of valuable assurance passing from the dead to the living. That is the event on which Congress based the inclusion of property so transferred in the gross estate as a step in the

calculation to ascertain the amount of what in section 301 [44 Stat. 69] is called the net estate. Thus was reached what it reasonably might deem a substitute for testamentary disposition. United States v. Wells, 283 U.S. 102, 116, 51 S.Ct. 446, 75 L.Ed. 867. There is no doubt as to the power of Congress so to do."

A careful examination and study of the Porter Case would seem to make it imperative that the principles there declared should be made to apply in this case.

Other cases cited as an aid in resolving the issues here presented were cases arising under Revenue Acts not so broad and all inclusive as the act of 1926, and particularly in relation to paragraph "(d)" thereof.

The last paragraph of said article "Ninth" of the trust agreements grants certain power to Anne H. Cross, the trustor's wife, and Roy Cross, his brother, after the death of the trustor. While such power would enable them to modify, amend, alter, or change the trust agreements, yet nevertheless such power was limited. The *enjoyment* of the trust could not be changed. In other words, the economic benefits could not be jeopardized, impaired, destroyed, or diminished. Such restrictions were not upon the power reserved by the decedent as trustor. By such restrictions upon the power of his successors or survivors, it is quite obvious that the decedent did not intend to put such limitations upon his own power of modification in respect of the enjoyment or economic benefits of the trust.

2. In view of the above interpretation of the trust agreement and applicable statute, it is not necessary to discuss another question raised by the government, namely, that the transfers were made in contemplation of death within the provision of subsection or paragraph (c) of said section 411, title 26 U.S.C. (26 U.S.C.A. § 411(c).

The testimony was overwhelming that such transfers were not made in contemplation of death, but, on the contrary, that same were made in the utmost good faith by the decedent. The facts were that the transfers were made February 23, 1929. On the last day of the preceding January the decedent had executed his last will and testament. By such will he devised a rather large estate to his wife. The beneficiaries designated in the trust indentures were given only nominal bequests or legacies in the will. Less than one month after the execu-

tion of his last will, the decedent created such trusts in favor of his sons and daughter, as above set out. Testator and trustor died March 24, 1931, or more than two years after the execution of his last will and testament and the creation of the trusts under discussion.

It may be observed, therefore, that the transfers were not within the two-year period creating the rebuttable presumption provided in said paragraph "(c)."

### Supplemental Opinion

Since writing the above, I have again reviewed the case in the light of additional authorities submitted by counsel for plaintiff, and I append hereto the following further memorandum on the case:

This action is brought by the plaintiff, Anne H. Cross, executrix under the will of Walter M. Cross, to recover back a portion of the money paid by her under the provisions of the Internal Revenue Act relating to the taxation of the transmission of estates of decedents.

In determining the gross value of decedent's property for the purpose of calculating the tax, three trust estates established by Walter M. Cross were included, and improperly so, according to the plaintiff. The amount sought to be recovered in this action is that portion of the tax paid which represents the amount levied by reason of the inclusion of this trust property.

By the execution of three indentures on February 23, 1929, identical in their terms except that each named a different beneficiary, Walter M. Cross created the three trust estates involved in the present dispute. One trust was in favor of Walter M. Cross, Jr., a son, one was for the benefit of Matthew Forbes Cross, a son, and the other named Annette Forbes Cross, a daughter, as recipient of the beneficial interest thereby created. The justification set forth for including the trust estates as among the assets of the decedent, which were properly subject to a succession tax, is that the trustor, under the terms of the indentures, retained the power to change in substantial respects the enjoyment of the economic benefits of the several estates, within the meaning of section 411(d), title 26 U.S.C., 26 U.S.C.A. § 411(d).

In defining the mode for computing the gross value of an estate for the purpose of determining the amount of the federal

estate tax due, section 411, title 26 U.S.C. (26 U.S.C.A. § 411) provides:

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *

"(d) *Revocable transfers.* To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke."

■ 1. The retention of control until the death of the settlor over the future enjoyment of the beneficial interest in property conveyed is a value in the property. It is this value at the settlor's death that forms the basis for the inclusion of such transfers within the decedent's estate for the purpose of laying a succession tax. Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880; Helvering v. City Bank Farmers' Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L.Ed. 62.

■ 2. If there should be an absolute conveyance during the lifetime of the decedent, which puts it beyond his control to aid a shifting of the interests created, the transfer cannot be properly included within the gross estate. Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L. Ed. 29, 100 A.L.R. 1239; Becker v. St. Louis Union Trust Co., 296 U.S. 48, 56 S. Ct. 78, 80 L.Ed. 35; Helvering v. Helmholz, 296 U.S. 93, 56 S.Ct. 68, 80 L.Ed. 76; White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80; Reinecke v. Northern Trust Co., 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A. L.R. 397; Commissioner of Internal Revenue v. Chase National Bank (C.C.A.) 82 F.(2d) 157; Witherbee v. Commissioner of Internal Revenue (C.C.A.) 70 F.(2d) 696; Helvering v. Dort, 63 App.D.C. 98, 69 F.(2d) 836.

3. The sole dispute in this case is whether such a control over the trust estates was reserved by the indentures as to bring the transfers within the provisions of section 411(d), supra. If such a power existed in the trustor, it must be found in the ninth paragraph of the trust instruments, the text of which is set forth in the footnote below.[1]

---

[1] "The Trustor during his lifetime shall have the right at any time to modify, amend, alter or change this trustee agreement in such manner as he may desire, *but the Trustor does not reserve the power to revest in himself title to any part of the corpus of the trust, and the Trustor does not reserve or possess the power to have the interest, income or dividends of the trust distributed to him or be held or accumulated for future distribution to him and/or be applied in any way or manner for his use and/or benefit.* All such amendments, alterations and changes which may at any time hereafter be made shall be made in writing and shall be filed with the Trustee. From and after the date of the filing of the same with the Trustee this Trust Agreement shall in the particulars specified in said amendment or amendments be deemed amended, altered and changed in the manner and to the extent as is provided in the amendment or amendments so filed, to the same extent and with like effect as if said amendments, changes and alterations were incorporated in and made a part of this indenture at the time of the execution thereof in lieu of the provisions of this Agreement so modified and changed.

"After the death of the Trustor, Anne H. Cross, Trustor's wife, if she shall survive the Trustor, and after her death, Roy Cross, brother of Trustor, if he shall survive the Trustor, and Anne H. Cross *shall have the right to modify, amend, alter or change this Trust Agreement, provided, however, such amendments, alterations and changes so made by Anne H. Cross and/or Roy Cross, shall not jeopardize, impair, destroy or diminish in any manner or particular whatsoever the estate or corpus or income of the trust estate or the estate of the Beneficiary therein,* and shall not jeopardize, impair, destroy or diminish the right of the Beneficiary to have and receive the interest, income, benefits and returns of the trust estate and/or the principal or corpus of the trust estate as is provided in this indenture. And it is provided further that no such change, alteration or amendment made by any of the parties herein authorized to make such changes, shall increase the duties, obligations and/or liability of the Trustee, except by written instrument which shall be agreed to by the Trustee." (Italics mine.)

594

4. Notwithstanding that he reserved no estate for himself, the trustor did reserve to himself "the right at any time to modify, amend, alter or change this trust agreement in such manner as he may desire." Was the power broad enough to permit of a redistribution of the economic benefits of the several estates? Would it have been permissible for the settlor to have added to the parties beneficially interested in the trust estates, or have substituted another or others for the original beneficiaries? This depends upon a proper construction of the language used, and in construing the instrument the ordinary meaning of words used should be attributed to them in the absence of anything in the instrument to deflect from that meaning. 65 C.J. 502.

5. The reservation of power was broad and was obviously intended to embrace a complete control over the enjoyment of the beneficial interests created with the exception that the trustor could not again come into the class of those who were entitled to be economically benefited by the estates.

Other provisions of the indentures relate to the mode of termination and the distribution of the trust funds upon that event, as well as provisions for the changing of trustees and prescribing the duties of the trustees. The word "change" is defined by Webster as follows: "To alter by substituting something else for, or by giving up for something else; to put or take another or others in place of, for, or among." As used in the several instruments, the word "change" is broad enough to include the substitution or addition of beneficiaries as well as other provisions of the trusts. Granting that the other words definitive of the reserved power might not be sufficient to authorize a shifting of the beneficial interests, yet the word "change" is much broader than the others. It might be said that to amend is to change for the better by removing defects or faults. It refers to that which falls short of excellence. To modify is to make different by change of quality. To alter is to change partially. But to change is to make a thing distinctly other than it has been. Again, in distinguishing between the words "change" and "alter," Webster says: "To change (the more general and stronger term) is to render something essentially different from what it was, *even to loss of identity, or the substitution of one thing for another*. To alter is to make different in some material

respect, as in form or detail, without implying loss of identity." (Italics mine.) Why would not the right to change include the right of substitution of parties or interests as well as other substitutions in the indentures? There seems to be little limit upon the conversion comprehended and allowed by the term.

6. There is nothing in the instruments themselves to indicate that a contrary understanding of the terms existed in the mind of the settlor, e converso, the very phraseology of clause 9 compels the affirmative inference that he understood the words to be efficient in reserving a control over the enjoyment of the beneficial interests. Strongly indicative of the intention of the trustor to reserve such a control is the one limitation which he placed on the reservation of power to himself, to wit: "* * * But the trustor does not reserve the power to revest in *himself* title to any part of the corpus of the trust, and the Trustor does not reserve or possess the power to have the interest, income, or dividends of the trust distributed to *him* or be held or accumulated for future distribution to *him* and/or applied in any way or manner for *his use and/or benefit*." Specific limitations or exceptions strengthen the general words of an instrument. In construing the limitation it is to be noted it applies only to the revesting of interests in the *settlor*, and since it only prohibits revesting in the latter, the limitation, when considered in connection with the general expression of power, produces the inference that limitations which were omitted but might have been included were not intended to exist. Expressio unius est exclusio alterius.

7. Again, by the same words "modify, amend, alter or change," the trustor vested a power in his brother and wife to be exercised after his death. Words used in different parts of an instrument are presumed to have been used in the same sense. Here, by a limitation or proviso, he expressly limited the phraseology employed so as not to include the power in any way to diminish the interests of the named beneficiaries. If the settlor intended to reserve no power of controlling the economic benefits of the several estates, why did he not place the same restrictions upon himself that he placed on others in whom he otherwise confided an identical power? From a comparison of the limitations and a consideration of the ordinary meaning of

595

the words employed, the only rational inference to be drawn from the indentures is that the trustor intended to, and did, reserve to himself the power to change or diminish the enjoyment of the trust if he should so desire. Such strong expressions of a particular intent will not be overcome by any implied general intent.

8. Turning now to the precedents for such a construction of the reserved power (although precedents are of little value in the construction of a trust instrument), a few cases will be reviewed:

In Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 53 S.Ct. 451, 452, 77 L.Ed. 880, involving the application of the Revenue Act of 1926, § 302(d), section 411 (d), 26 U.S.C.A., the power contained in the instrument was as follows: The trustor reserved the power to *"modify or alter in any manner this indenture,* and any or all of the trusts then existing and the limitations and estates and interest in property hereby created and provided for subsequent to such trusts; and in case of such modification or alteration said instrument shall direct the revised disposition to be made of the trust fund or the income thereof or that part of the trust fund or the income thereof affected by such modification or alteration * * * and no one, born or unborn, shall have any right, interest, or estate under this indenture except subject to the proper modification or alteration thereof; *but this power to modify or alter is not intended and shall not be construed to include the right to the Donor to make such modification or alteration in his own favor or in favor of his estate, but shall apply only so far as the interest of third parties may be concerned."* (Italics mine.) The italicized portions of the reservation quoted bear a striking resemblance to the reservation in the instruments here involved. True it is that in that case the words of the trust indenture expressly mentioned the right to "modify or alter * * * any or all * * * estates and interest in property hereby created," and that the reserved power should "apply only so far as the interest of third parties may be concerned," yet the words "modify or alter" used there would not be nearly so strong as the words used in the indentures here involved without the addition of these powers and limitations. Of the reservation in that case, the court said:

"By the trust agreements, decedent divested himself of all interest in the bonds and, subject only to the reserved power, transferred full title to the trustee and beneficiaries. The reservation is broad; evidently he intended to be free at any time and from time to time to alter or modify the disposition of the property as he might see fit, subject to the restriction above mentioned."

In Reinecke v. Northern Trust Company, 278 U.S. 339, 49 S.Ct. 123, 73 L.Ed. 410, 66 A.L.R. 397, the phrase employed by the trustor was "alter, change, or modify," which the court assumed included the power to shift the economic benefits of the trust estates involved without directly passing on the meaning of the words.

In Faulkner v. Irving Trust Company, 231 App.Div. 87, 246 N.Y.S. 313, the creator of a voluntary trust reserved the right to amend the instrument "in any manner whatsoever," except that he should not withdraw, by amendment, any of the principal which was in the form of securities. By an amendment, the trustor excluded his sister as a beneficiary, and thereafter entirely revoked the trust without her consent. Under the laws of New York a trust was revocable if the trustor and trustee were the only parties interested. It was held that by an exercise of the reserved power of *amendment* the settlor had effectively removed his sister as a beneficiary so that she could not thereafter contend that her consent as a beneficiary was necessary to a revocation.

In Cover v. Burnet, 60 App.D.C. 303, 53 F.(2d) 915, cited by plaintiff as authority for an interpretation of the power contrary to that reached here, there had been included within the gross estate of the decedent a trust estate created by an instrument which reserved to the trustor the power "to alter, change, or modify * * * without the right to withdraw any part of the principal." The court held that the trust estate had been improperly included in the calculations of the decedent's gross estate for the reason that there was no reservation of the power to shift the economic benefits. But that case is clearly distinguishable for the reason that it expressly was provided in the indenture that *there should be no right to withdraw any of the principal,* and this could only be construed to mean that the interest of the beneficiaries was so far vested that it could not be disturbed. That this was the efficient language moving the court to the construc-

tion adopted is demonstrated by the following excerpt from the opinion:

"It is expressly stipulated in the reservation that the grantor shall have no right thereafter to withdraw any part of the principal from the trust. In other words, the grantor reserved no power to repossess himself at any time of any part of the principal of the fund, nor to withdraw the same from the beneficiaries who were to receive it under the terms of the trust instrument. Accordingly, the right reserved by the grantor to alter, change, or modify the trust did not extend to a redisposition of the corpus of the fund."

9. Having determined that the reserved power was broad enough to have permitted the settlor to redistribute the economic benefits of the several trusts in suit, the case of Helvering v. St. Louis Union Trust Co., 296 U.S. 39, 56 S.Ct. 74, 80 L.Ed. 29, 100 A.L.R. 1239, becomes inapplicable as the only question there involved was the effect of creating a reversion in the trustor contingent upon events beyond his control. Here, as pointed out, the shifting of the beneficial interests in the several trusts was dependent upon the will of the settlor.

Recovery of the tax paid by the executrix should be denied. An appropriate journal entry will be prepared and presented to the clerk by counsel for the government. It is so ordered.