## THEOPOLD v. UNITED STATES.

### No. 4263.

Circuit Court of Appeals, First Circuit.

Dec. 2, 1947.

R. Gaynor Wellings, of Boston, Mass. (Tyler & Reynolds, of Boston, Mass., on the brief), for appellant.

Newton K. Fox, Sp. Asst. to the Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., Helen R. Carloss, Robert N. Anderson and James P. Gartland, Sp. Assts. to the Atty. Gen., and William T. McCarthy, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., on the brief), for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal from a judgment entered for the defendant in an action brought in the District Court of the United States for the District of Massachusetts to recover estate taxes, plus interest paid thereon, alleged to have been erroneously and illegally assessed against and collected from the present plaintiff's predecessor-executor. The sole question presented is whether a reservation in a certain indenture of trust executed by the plaintiff's decedent on December 29, 1915, of "the power from time to time by an instrument in writing signed by me to amend this trust instrument so that it will more clearly express my actual intentions if I shall consider such amendment advisable, as to which I shall be the sole judge," makes the corpus of the trust taxable to the decedent's estate under § 811(d) (2)[1] of the Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 811(d) (2).

The plaintiff-appellant contends that the decedent in the quoted reservation retained no power to alter the manner in which either the principal or the income of the trust was to be held or distributed, but instead retained only the power to clarify the meaning of the trust provisions from time to time in the future so as more clearly to express his actual intentions at the time he created the trust, and therefore that the reserved power of amendment is not in any real or substantial sense a power to amend at all, or at the most is only a power to amend in some "slight" or "trivial" way. See Porter v. Commissioner, 288 U.S. 436, 443, 53 S.Ct. 451, 77 L.Ed. 880. Hence he takes the position that the corpus of the trust is not taxable under § 811(d) (2), supra. The District Court, however, adopted the Commissioner's view. It considered the power reserved by the decedent one to modify the provisions of the trust instrument

---

[1] § 811. Gross Estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property. * * *

"(d) Revocable transfers.

"(2) Transfers on or prior to June 22, 1936.

"To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, * * * by the decedent * * * to alter, amend, or revoke, * * *."

from time to time in the future in any way he might see fit, even to the extent not only of substantially controlling the administration of the trust but also of radically shifting the economic benefits to flow from it, and therefore held the corpus of the trust taxable to the decedent's estate and dismissed the plaintiff's complaint.

Obviously the words of the reservation are not to be construed in vacuo—as an isolated grammatical phenomenon—but are to be read in their context and in the light of the circumstances surrounding their use. We turn, therefore, to the consideration of the trust instrument in its factual setting.

When the decedent set up the trust in December 1915 he was married and the father of three children, aged ten, eight and two, all of whom are still living. These children were the named beneficiaries of the trust. But they were not given immediate enjoyment thereof either as to income or any part of principal.[2] Instead the decedent directed his trustees to accumulate the "net income" of the property in the trust "for the benefit" of his children until they should respectively reach the age of twenty-one and then "After each of my said children shall arrive at the age of twenty-one years and thereafter during his or her natural life, to pay over to such child in quarter yearly payments one-third of the said net income of the trust properly."

Following this the trust instrument provided that the "proportion of the trust property" of any child dying under twenty-one without surviving issue should be held by the trustees and its income accumulated for the benefit of such surviving children as might then be under that age, or paid over to such of the surviving children as might then be over that age; that the share of the principal held for any child dying under twenty-one leaving surviving issue should

be paid over to such issue; that if all the children should die under age and without issue the trust should terminate and the corpus revert to the decedent if living or to his devisees if not;[3] and that on the death of any child after reaching majority his proportionate part of the trust property should be paid over to his or her executor or administrator as the case might be "to be disposed of * * * in the same manner as if he or she had died possessed of the same."

Next the decedent-settlor gave his trustees, one a trust company and the other an individual, directions as to the investment and management of the corpus of the trust; provided for their compensation; inserted spendthrift provisions, and provided for successor trustees; and then in conclusion he reserved the power quoted in the first paragraph of this opinion.

The District Court read the trust instrument just summarized as clearly expressing the intentions of the decedent at the time it was drawn with respect to [69 F.Supp. 946, 950] "the manner in which he intended the beneficiaries of the trust to participate", and as fully anticipating and providing for "future eventualities normally foreseeable." Therefore, assuming that neither the decedent nor any one else would intend to reserve a power to clarify what was already abundantly clear, such a power being fruitless and unnecessary, and considering the wording of the power itself unclear, that court was of the opinion "that the language of the contested power lends itself more logically to the conclusion that the settlor reserved this power in order to retain control over the trust to meet unanticipated future contingencies or economic changes", that is to say, "to control the administration of the trust and to shift economic benefits thereunder whenever he might desire to do

[2] The decedent did, however, provide that if "at any time or times during the minority of any of my said children either I or my wife * * * in case I am not then living, or any guardian of such child in case neither I nor my said wife are then living, shall in writing so request, the trustees hereunder shall pay over to me or to her or to such guardian such sum of money as may be asked for, to be used for the maintenance or education of such child, not however, to exceed the income that may have then accumulated for such child." It does not appear that this power was ever exercised.

[3] Considering the age of the children at the time when the trust was created in 1915 and the fact that they are all still alive, it is obvious that the possibility that the property in the trust would revert had become extinct long before the decedent's death.

so in the future" rather than merely to "make clarifying changes to express his original intentions, as the plaintiff contends." And it buttressed this conclusion by reference to instances of the decedent's exercise of the power prior to his death on January 1, 1942, which we shall consider hereafter.

We do not share the District Court's view of the trust indenture. On the contrary it seems to us that the language of the reserved power is clear and that the language of the earlier dispositive provisions is not.

In these latter provisions the decedent, after directing the accumulation of the net income of the trust for his three children until each should attain the age of twenty-one, and after providing for the withdrawal during minority of each child's share of accumulated net income, but no more, in so far as it might be required for a child's maintenance or education, directed the payment in quarterly installments of one-third "of the said net income of the trust" to each child upon attaining majority and "thereafter during his or her natural life." Literally read "said net income" refers to accumulated net income, that being the only income previously mentioned in the trust instrument. But so read the provision could not possibly be carried out since it would obviously be impossible upon a child's attaining majority to divide the income which had been accumulated for him so that it could be distributed to him periodically during the rest of life thereafter however long he might chance to live.

What the decedent must have intended by this provision, but certainly failed to express, was that one-third of the net income of the trust accruing after each child reached twenty-one was to be paid to such child quarterly for life. But this leaves the income accumulated by the trust during the child's minority undisposed of. It cannot be determined whether that accumulated income should be paid over in a lump sum proportionately to each child on attaining majority, which would give different amounts of accumulated income to each child and would also be somewhat at variance with the spendthrift provisions of the trust, or whether it should be added to the principal as each child came of age, or whether as each child came of age it should be added proportionately to the part of the principal held for such child, which would result in unequal fractions of principal held for the children, the oldest child having the smallest principal and the youngest child the largest. Indeed the trust instrument's lack of clarity with respect to the disposition of accumulated income must have become apparent to the decedent because the first four of his amendments referred to above dealt with this problem as will later appear.

From the foregoing we cannot say that the trust instrument is abundantly clear and hence that reservation of a power to clarify it was needless. On the contrary the instrument is so inexpertly phrased that it seems to us not at all unlikely that the decedent, even though perhaps only vaguely, realized its shortcomings of expression and in consequence wished to keep the power to settle questions of its meaning which he anticipated might arise. Certainly if he had wished to retain broad powers of amendment as to substance he could have said so very simply by merely reserving a general power to alter, amend or revoke. And there could have been no tax motive in 1915 for not retaining such a broad power of amendment. It seems to us that the decedent by resorting to the cumbersome phraseology of the reservation must have intended to convey some particular meaning, and the words he used, in their commonly accepted understanding, indicate to us that what he intended to do was to keep only a power to clarify what he had said in the trust instrument, not to change it to say something else. That is to say, we think the words "to amend this trust instrument so that it will more clearly express my actual intentions," as naturally and ordinarily used, import a power to amend the trust instrument in such a way as to make the words used therein more accurately express the intention in the decedent's mind when he drew the trust instrument, and that it would be straining language to read them as importing a power to amend by changing words so as to express a subsequent new intention. Nor do we see that the words following the above quoted clause ("if I shall consider such amendment advisable, as

to which I shall be the sole judge") suggest any different interpretation since they only express what the law would imply in their absence.

Therefore the reserved power as we construe it, while a power to amend in the sense of altering language so as more clearly or better to express an original intention, is not a power to amend in the sense of altering language to express a new or different intention. And so construed we consider it, if in the statutory sense a power to amend at all, to be a power to make only "slight" or "trivial" changes in the trust instrument and hence not a power within the meaning of the taxing statute as construed in Mellon v. Driscoll, 3 Cir., 117 F. 2d 477, 479; Commissioner v. Hofheimer's Estate, 2 Cir., 149 F.2d 733, 736. See Porter v. Commissioner, 288 U.S. 436, 443, 53 S.Ct. 451, 77 L.Ed. 880. Cf. Dort v. Commissioner, 63 App.D.C. 98, 69 F.2d 836, 841; Commissioner v. Chase National Bank, 2 Cir., 82 F.2d 157, 158; Chickering v. Commissioner, 1 Cir., 118 F.2d 254, 259, 139 A. L.R. 508.

Indeed the language of the reservation of power seems so clear to us as to preclude resort to extrinsic evidence in order to elucidate its meaning. But if we are in error in this and the decedent's exercise of the power he reserved may be considered in determining the question of its intended scope, our views remain unchanged.

The decedent amended his trust five times, in each instance stating as a preamble to his amendment that he was exercising the power he had reserved in the indenture. His first four amendments, as already appears, dealt with the disposition of accumulated income as each child came of age. By his first one he provided that the "proper proportionate part" of the accumulated net income "in the hands of the trustees when any child should arrive at the age of twenty-one years or shall die before reaching that age, shall then be added to and become a part of the principal held for such child, or payable to such child's issue, if any." Later on, in fact just before his oldest child became twenty-one, the decedent, apparently realizing that his first amendment resulted in giving his children unequal shares of principal, amended his trust indenture a second time, this time providing that as each child came of age accumulated net income should be added to the corpus, thereby according equal treatment to his children. By his third amendment he cancelled and revoked his second, and by his fourth amendment he cancelled and revoked his third and revived his second, his fourth amendment containing the statement that his third "was executed by me through a misunderstanding and it is my desire and I hereby direct that, in so far as legally permissible, the net income from said trust estate accruing since" the date of his third amendment "shall be accounted for as if the said Amendment * * * which is hereby cancelled, had never existed."

The result of these amendments is to make certain what was doubtful before, that is, to make certain that the three children should share equally in the accumulated net income of the trust. They do not shift economic benefits by taking what was clearly given to one child in the original trust instrument and transferring it to another. Instead they show an attempt, at first unsuccessful but eventually successful, to state explicitly that the children should have equal shares of the accumulated net income, and it seems to us that this is what the decedent must have meant from the outset since it is abundantly clear from reading the original trust instrument as a whole that he intended his children to share the economic benefits of the trust exactly equally. Thus these amendments indicate not only that the decedent realized the fact that in the original trust instrument he had not spoken clearly with respect to the disposition of accumulated income, but also that he considered that he had retained the power to amend his original trust indenture to make it more clearly express his original underlying intention to treat his children exactly alike.

The decedent's fifth amendment, which is dated after all his children had come of age, presents a somewhat different problem.

In his original trust instrument the decedent, as already indicated, provided that on the death of a child over twenty-one the trustees were to "pay over the proportionate part of the principal of the trust property as then existing, the income of which

had been payable to such child", to the executor or administrator of the child so dying "to be disposed of" by the child's executor or administrator "as a part of the estate of such child in the same manner as if he or she had died possessed of the same." By his fifth amendment the decedent changed this provision by giving his children a power of appointment by will with respect to their shares of the trust corpus and, in default of an exercise of that power, he directed his trustees to distribute each deceased child's share of the corpus "among the then living issue of such child" by right of representation, and in default of living issue, "to and among those persons who would be entitled to take the same as the heirs-at-law of such child of mine if he or she had deceased intestate owning the same."

We cannot say that this amendment is merely in clarification of the original indenture of trust. It definitely alters the meaning of a provision of that instrument by the addition of a power of appointment. But it does not unmistakably follow from this that the decedent originally intended to reserve the power to make such an alteration. He obviously was not highly skilled in the law of trusts or in drafting trust instruments, and he may unwittingly have exceeded the power reserved. And furthermore the change wrought by the amendment is so slight—in practical effect it is a change in form rather than a change in substance in that it changes the method by which a child may direct the devolution of his share of the trust instead of changing the persons entitled to take eventually—that the decedent may reasonably have thought that it was only a change more clearly expressing his actual original intention instead of one expressing a new and different intention. Certainly the possible inferences from this amendment that the decedent intended to reserve a power to amend substance are not so clear that they more than counter-balance all the contrary indications we have considered.

Since we construe the power not as one under which the decedent up to the time of his death could legally alter beneficial interests in the trust, either directly as in Porter v. Commissioner, 288 U.S. 436, 53 S.

Ct. 451, 77 L.Ed. 880, or in practical effect as in Commissioner v. Estate of Holmes, 326 U.S. 480, 66 S.Ct. 257, 90 L.Ed. 228,

The judgment of the District Court is reversed and the case is remanded to that court for the entry of a judgment for the plaintiff.