ROBERT GLENDINNING AND EDNA M. WELSH, EXECUTORS OF THE ESTATE OF CHARLES N. WELSH, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 81585.    Promulgated August 31, 1937.

*William H. S. Wells, Esq.*, for the petitioners.
*W. Frank Gibbs, Esq.*, for the respondent.

#### OPINION.

MILLER: The total net distributive income of the Charles N. Welsh trust during the year 1931 was $47,477.23. Pursuant to the terms of

the trust, this was distributed in part directly to the decedent; in part to Helen Gallatin Welsh de Stubner; in part to Charles N. Welsh, Jr., a son, who was emancipated during the entire year; and in part to a son, Albert R. G. Welsh, who was a minor until November 10, 1931. There is no dispute as to the tax liability of the petitioner for the income which was distributed directly to the decedent.

Petitioners concede, moreover, that the income distributed to the minor son prior to November 10, 1931, the date of his emancipation, should be taxed to decedent. *Helvering* v. *Schweitzer*, 296 U. S. 551. Respondent concedes that the amount distributed to the emancipated son during the entire year was not taxable to the decedent. The only question remaining, therefore, is whether or not that portion of the income of the trust distributed to Helen Gallatin Welsh de Stubner for the period from January 1 to July 21, 1931, the date of her death, was taxable to the decedent.

It is now well settled, following the decision in *Douglas* v. *Willcuts*, 296 U. S. 1, that the income of a trust paid directly to a divorced wife is taxable to the husband who created the trust, whenever the purpose of the trust and the provision for payment of its income is to satisfy a legal obligation of the husband to support and maintain his wife, whether the satisfaction of that obligation results from the payment of alimony decreed by a competent court, or from the carrying out of a separation agreement which provides for such payments in lieu of alimony, dower, or other rights of the wife in the property of the husband. *Albert C. Whitaker*, 33 B. T. A. 865; *Helvering* v. *Brooks*, 82 Fed. (2d) 173. See also *Helvering* v. *Coxey*, 297 U. S. 694, reversing 79 Fed. (2d) 661; *Helvering* v. *Stokes*, 296 U. S. 551, reversing 79 Fed. (2d) 256.

In several recent cases, however, this proposition has been limited, where it appeared that the legal obligation of the husband to support and maintain his wife had been terminated, under the law of a particular state, by divorce or by subsequent remarriage of the wife; *Harry S. Blumenthal*, 34 B. T. A. 994; affd., 91 Fed. (2d) 1009; *Henry Oliver Rea*, 35 B. T. A. 1132; *Edward T. Hall*, 36 B. T. A. 398. And in these cases it was held that the income of the trust distributed to the wife after divorce or remarriage is not taxable to the husband.

The instant case arose in Pennsylvania, where the decedent, his former wife, and their children resided. This Board has held, and the respondent conceded in his brief, that under the laws of Pennsylvania, without more, a husband is not liable for the support and maintenance of a sane, divorced wife. See *Henry Oliver Rea, supra,* and authorities there cited.

Nevertheless, the respondent contends that under the circumstances of this case the rule of *Douglas* v. *Willcuts, supra,* governs,

and the petitioners are liable, on the theory that a legal obligation arose from the trust agreement itself, which obligation was satisfied in part by the payment of the income of the trust in 1931 to Helen Gallatin Welsh de Stubner. This contention is correct and must be sustained.

The trust agreement referred to was entered into on October 5, 1918, by Charles N. Welsh, party of the first part, Helen Gallatin Welsh, party of the second part, and the Pennsylvania Co. for Insurances on Lives & Granting Annuities, party of the third part. It recited the marriage of the parties of the first and second parts; the existence of two sons; the making of an order by the Municipal Court of Philadelphia County directing the first party to pay $3,000 per month to the second party for the support of herself and the two children; the existence of an agreement between the first and second parties, varying the order of the court; "the purpose of the first and second parties to supersede and terminate said support order and said agreement * * * and to release each other from all further performance thereunder; and in lieu thereof to create a trust estate for the uses and purposes (t) hereinafter expressed * * *." The trust agreement next recited the creation of the trust in usual terms and thereafter set forth the following provisions:

ELEVENTH. The party of the first part also agrees to give each person to whom any fixed amount of income is payable hereunder, in addition to such amount, sums which will be sufficient to pay, with respect to said fixed amount and the payments made under the provisions of this Article, to wit, Article Eleventh, the following charges:

(a) All taxes imposed, levied, assessed or demanded by the United States or any State or Territory (or sub-division thereof) of the United States except taxes imposed, levied, assessed or demanded by reason of the residence of the beneficiaries outside of the State of Pennsylvania.

(b) The amount of the United States income tax imposed, levied, assessed or demanded thereon from time to time not exceeding the amount which would be payable under the law in force at the date of this agreement (if then in force), together with such amount of said tax imposed, levied, assessed, or demanded as aforesaid, as shall be in excess of double the amount computed as above. Calculation of taxes under this subdivision, to wit, subdivision (b) shall be on the assumption that said fixed amount (plus payments under this article, to wit Article Eleventh), is the total income of such person.

Each of said payments shall be made at least thirty days prior to the last date for payment of such tax without penalty and shall be made by the Trustee, so far as it will accomplish that purpose, out of any income in the hands of the Trustee at such time or times to which the party of the first part shall be entitled hereunder; but in the absence of such income or to the extent that same is not sufficient for this purpose, then by the party of the first part.

\* \* \* \* \* \* \*

THIRTEENTH. It is agreed by and between the parties of the first and second parts that the order of the Municipal Court dated the 21st day of June 1917,

shall be revoked and the agreement dated the 16th day of July 1917 between the parties of the first and second parts, be cancelled as of April 1st, 1918; the party of the second part hereby releasing the party of the first part from all claim and demand by reason of any payments heretofore made by the party of the first part to the party of the second part, or for or on account of the party of the second part, or in payment of any bills contracted by the party of the second part or for which she might be or has been held liable.

FOURTEENTH. These presents are without prejudice to either party's right to institute, prosecute, maintain or obtain upon any legally sufficient grounds, any suit or suits for divorce *and these presents shall remain in full force and effect notwithstanding any divorce between the parties should any occur or be granted.* [Italics supplied.]

FIFTEENTH. Said Charles N. Welsh, party of the first part, agrees that in each and every year during the continuance of this trust, in which he or his estate is entitled to the excess income, if any, from the trust, in which there should not be produced a net sum sufficient to enable the Trustee to distribute hereunder the sum of Thirty-six thousand Dollars ($36,000) in such year, he or his estate will forthwith make up and pay to the Trustee the amount of such deficiency.

On November 18, 1918, a decree of the Court of Common Pleas of Philadelphia County was entered, divorcing Helen Gallatin Welsh and Charles N. Welsh. On January 6, 1919, a petition was presented on behalf of Helen Gallatin Welsh in the Municipal Court of Philadelphia County, reciting the granting of the decree of divorce and the making of a settlement between the parties, and praying that the support order be vacated and arrears remitted. On the same day the prayer of the petition was granted. Thereafter, in August 1921, Helen Gallatin Welsh was married to one de Stubner and on July 21, 1931, she died.

The legal obligation described in *Douglas* v. *Willcuts, supra,* was not limited to one arising from a general obligation to support and maintain a wife, or from a court decree or order. In that case, for example, the Supreme Court referred to the statutory provision that income of a trust reserved by the grantor for the payment of premiums upon certain types of insurance policies is taxable to him (Revenue Act of 1928, sec. 167), and then went on to hold that, in spite of the statutory earmarking of such income, it was not the intention of Congress thereby to exclude from tax liability other trust income which, in contemplation of law, remains in substance that of the grantor. It said further:

We do not regard the provisions of the statutes as to the taxation of trusts, fiduciaries and beneficiaries (Revenue Act 1926, §§ 2, 219, 26 USCA §§ 1696 and note, 161–167 note; Revenue Act 1928, §§ 161, 162, 26 USCA §§ 161, 162) as intended to apply to cases where the income of the trust would otherwise remain, by virtue of the nature and purpose of the trust, attributable to the creator of the trust and accordingly taxable to him. These provisions have appropriate reference to cases where the income of the trust is no longer to be regarded as that of the settlor, and we find no warrant for a construction which

would preclude the laying of the tax against the one who through the discharge of his obligation enjoys the benefit of the income as though he had personally received it.

To hold that the petitioner in the instant case was not liable for tax upon the income of the trust paid to Helen Gallatin Welsh de Stubner in 1931 would require us to hold that the trust instrument created no legal obligation upon the part of Charles N. Welsh which continued after her divorce and remarriage. Such a holding would be clearly unjustified under the circumstances of this case. Helen Gallatin Welsh was a party to the trust agreement; there was a valuable consideration for the promises of Charles N. Welsh in the form of a legal obligation, then existing, to support her, together with a court order to pay to her, for her support, $3,000 per month; the agreement specified that the trust was being created for the purpose, among others, of providing support for her during her lifetime, in lieu of then existing obligations; the possibility of divorce was recognized, and it was expressly provided that the payments under the trust should continue to be made notwithstanding any divorce; the taxpayer agreed, further, to make up any deficiency which might occur in any year because of the failure of the trust to produce the required income; and he agreed further to pay to Helen Gallatin Welsh additional amounts sufficient to provide for taxes, imposed by the United States or any state or territory, with respect to the income paid by the trust.

If these various undertakings had been included in a simple contract by the terms of which a third party thereto had been required to pay, on behalf of the taxpayer, the various amounts specified, such payments clearly would have been made in his behalf and in satisfaction of his obligations. *Old Colony Trust Co.* v. *Commissioner*, 279 U. S. 716; *United States* v. *Boston & Maine Railroad*, 279 U. S. 732. "The creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered." *Douglas* v. *Willcuts*, *supra*.

The facts in the instant case clearly distinguish it from other cases decided by this Board since *Douglas* v. *Willcuts*, in which the income of trusts paid to former wives was held not taxable to the settlors of the trusts following divorce or remarriage. In *Harry S. Blumenthal*, *supra*, the trust there involved was created by the taxpayer pursuant to a decree requiring him to do so. It was created expressly for the purpose of paying alimony; it related solely to his obligation to support his wife; presumably its effective life had the same limitations as the decree which brought it into being. In

*Henry Oliver Rea, supra,* the opinion therein emphasizes the facts which distinguish that case from the instant one:

The trust agreement does not show on its face that it was created to provide income for the support of the wife or in lieu of alimony, or that it constituted a settlement of the rights of the parties growing out of the marital relationship existing between them. It does not refer to a contemplated separation of the parties and contains no waiver or relinquishment by the wife of support or of her interest in petitioner's estate. * * * The instant proceeding is distinguishable from the above cases involving income from trusts created by the husband for the wife in that therein either the separation agreement, decree of the court, or stipulation of the taxpayer and the Commissioner disclosed that the income involved was provided for and paid in lieu of alimony or the wife's interest in the husband's property.

In *Edward T. Hall, supra,* it appeared that the taxpayer divorced his wife on the ground of "indignities." She made no defense and shortly afterward married the man, her misconduct with whom occasioned the divorce. The taxpayer created the trust because his wife "begged him for an allowance, and because of his love for her and the fact that she was the mother of his four children and because he could not see her suffer * * * in spite of what she had done to him * * *." We held in that case, on the facts there found, that "to justify taxation of the income of a trust to the grantor, it must appear that the trust was established to discharge a legal obligation of the grantor existing at or prior to the creation of the trust."

In the instant case there was a legal obligation existing at the time of creation of the trust and there was another legal obligation of Charles N. Welsh existing in 1931, in satisfaction of which income of the trust created by him was paid to Helen Gallatin Welsh de Stubner. Consequently, he was liable for tax thereon.

*Decision will be entered for the respondent.*