## THOMAS v. COMMISSIONER OF INTERNAL REVENUE.

### No. 75.

Circuit Court of Appeals, Second Circuit.

Dec. 5, 1938.

Spotswood D. Bowers, of New York City (Alice B. Baldridge and Joseph W. Kirkpatrick, both of New York City, of counsel), for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Arnold Raum, Sp. Assts. to Atty. Gen., for respondent.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The Board of Tax Appeals determined a deficiency in the income tax of the petitioner Elisabeth R. Thomas for the year 1930 amounting to $21,183.54, the correctness of which is disputed by her on the present appeal.

The taxpayer married Edward R. Thomas on November 5, 1912, and their son and only child was born on October 2, 1913. On May 8, 1924, the couple having already separated, entered into a contract for the settlement of property rights; and claims arising out of the marital relation. This was followed by a decree of divorce rendered on June 27, 1924, by the Circuit Court of Florida, where the parties were domiciled. The decree of divorce awarded to the taxpayer the custody of her son.

In the contract of May 8, 1924, the taxpayer relinquished all her rights of dower, inheritance and descent in the property of her husband, renounced any right to administer his estate, released all claims for future maintenance and support, and assumed liability for the support of the child. The husband on his part agreed to pay his wife various amounts in cash, to convey to her certain real estate and to create a trust fund of $200,000 on her behalf. In addition to these undertakings which were to be performed at once, he also agreed (a) to pay the taxpayer specified sums annually during their joint lives; (b) to create within five years (that is, by May 8, 1929) an additional trust fund of $100,000; (c) to charge his estate with a loan of $93,400 on certain insurance policies on his own life of the face amount of $425,000 payable to her, and to pay premiums upon such policies when due; (d) to assign to her his interest to the extent of $300,000 in the remainder of an estate created by his father's will, such $300,000 to become

payable upon the death of the life tenant, who was Ann Augusta Thomas, his mother, on condition, however, that the taxpayer should not have remarried; (e) to create upon the mother's death a trust fund of $200,000, the income of which should be paid to the taxpayer for life or until remarriage; (f) to guarantee performance by the Morning Telegraph Company of its contract with the taxpayer whereby she was to receive $10,400 annually for fifteen years for writing articles.

The husband died on July 6, 1926. At the time of his death he had fully performed all the obligations of the separation agreement which had become due. There remained unperformed: (1) The creation of the $100,000 trust by May 8, 1929, (2) the repayment by his estate of the $93,400 loan upon the life insurance policies; (3) the creation of a $200,000 trust upon his mother's death; (4) the payment of $300,000 to the taxpayer out of his father's estate after the death of his mother.

In addition, the taxpayer had not received payment from the Morning Telegraph Company for her articles since September 27, 1926.

A compromise agreement was executed in 1930 by the taxpayer, by the second wife of Edward R. Thomas, by the executors of his will and by the trustee named in the contract of May 8, 1924. Under this agreement the $100,000 trust was created for the taxpayer; the $93,400 loan on the insurance policies, together with interest, was paid in full, and the executors agreed to establish the $200,000 trust upon the death of the mother, and $125,000 in cash plus interest of $12,304.17 were paid directly to her in consideration of her release of her rights under the separation agreement.

During the year 1930 the taxpayer received $8,552.88 as her distributable share of the income from the trust of $200,000 created in 1924, and likewise $6,858.73 from the trust of $100,000 set up in 1930. The returns of the taxpayer were on a cash basis, but she failed to report either of these two receipts of income in her tax returns, regarding them as only payments in exchange for her relinquishment of personal rights growing out of the marital status. The Commissioner assessed them against her for that year. From the income returned for 1930 she claimed a bad debt deduction of $232,322.67 on the theory that the various obligations under the sep-

aration agreement of May 8, 1924, were debts and that the deduction was allowable since the unperformed obligations valued as of a given date exceeded the aggregate of the items in the compromise agreement as then valued. The Commissioner rejected the deduction. His rulings against the taxpayer in assessing both items of income derived from the trusts and in rejecting the bad debt deduction she had claimed were sustained by the Board of Tax Appeals.

The questions presented on this appeal are: (1) Whether the income from the trusts, paid over to the taxpayer in 1930, was properly taxable against her, and (2) whether she was entitled to a bad debt deduction as a result of the settlement of the obligations which her husband had entered into under the separation agreement of May 8, 1924, and not fulfilled prior to his death.

The question whether the income from the trusts was taxable against the taxpayer or her husband's estate is not on its face a simple one. It would have been taxable against the husband during his lifetime, even though a part of the consideration was in lieu of the dower rights or statutory interests in his estate to which she would be entitled upon his death. Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A.L.R. 391. Hughes, C. J., there said (at page 8, 56 S.Ct. at page 62): "However designated, it was a provision for annual payments to serve the purpose of alimony, that is, to assure to the wife suitable support. The fact that the provision was to be in lieu of any other interest in the husband's property did not affect the essential quality of these payments."

There is, however, authority for holding that the wife is liable for the tax after the legal obligations of the husband to support her in settlement of which a trust was created, had ceased. In Commissioner v. Harry S. Blumenthal, 2 Cir., 91 F.2d 1009, affirming 34 B.T.A. 994, per curiam, we held that the income of a trust set up for support and maintenance of a divorced wife was taxable to her upon her remarriage. In Robert Glendinning v. Commissioner, 36 B.T.A. 486, affirmed in 3 Cir., 97 F.2d 51, the opposite result was reached. In neither of the last two cases cited were the courts confronted with the difficulty that exists here of apportioning the consideration between the wife's right to support and her statutory rights in her husband's

property; nor were they confronted with the administrative difficulty of taxing his estate after he had died.

In Helvering v. Brooks, 2 Cir., 82 F. 2d 173, where a trust settlement had been made in exchange both for relinquishment of the divorced wife's right to support and for her statutory rights in her husband's property, we held that the husband alone was subject to the tax, saying: "Whether the trust income is used to discharge the husband's duty, made specific by agreement, to support the wife, or to discharge an obligation to pay her agreed sums for a release of rights in his property, cannot be material in determining the taxability of the husband." The same result was reached by the Supreme Court under similar circumstances in Douglas v. Willcuts, 296 U.S. 1, 56 S.Ct. 59, 80 L.Ed. 3, 101 A. L.R. 391.

In Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365, the Supreme Court held that the income from a testamentary trust accepted by a wife in lieu of dower was taxable to her. From Helvering v. Brooks, 2 Cir., 82 F.2d 173, and Helvering v. Butterworth, 290 U.S. 365, 54 S.Ct. 221, 78 L.Ed. 365, it may be inferred that the income in the case at bar should for reasons of practical administration be treated as paid by the husband for support and maintenance of the wife while he is alive and received by her for her dower or other statutory rights after he has died. Such a ruling avoids subjecting the husband's estate to administrative burdens after his death and also avoids attempting to discover what portion of the consideration was furnished for support and maintenance of the wife and what portion for her statutory interest in her husband's property. In Helvering v. Brooks, 2 Cir., 82 F.2d 173, such a determination was held to be impracticable during the life of the husband and would be equally so after his death.

█ Apportioning the consideration would be impossible in the present case. Accordingly the taxpayer has not sustained the burden of overcoming the decisions of the Commissioner and the Board.

█ We hold that the income received from the trusts in 1930 was properly assessed to the taxpayer.

█ The final question is whether the bad debt deduction of $232,322.67 was available to the taxpayer as claimed in her income tax report. We think it was properly disallowed by the Board.

Under the compromise agreement the obligations to create the trust fund of $100,000 and to pay off the loan on the insurance policies were carried out. The executors of the will of the taxpayer's deceased husband also entered into an agreement to establish the $200,000 trust fund on the death of his mother as he had himself done in the separation agreement. The only remaining obligations were the guarantee of payment of $300,000 out of the estate of the husband's father upon the death of Ann Augusta Thomas and the guarantee that the Morning Telegraph Company would pay the taxpayer $10,400 annually for fifteen years for writing articles. These obligations were extinguished by the payment of $125,000 and $12,304 interest under the compromise. The payment of $300,000 was only to be made if the taxpayer did not remarry. The amount due the taxpayer from the Morning Telegraph Company at the time of the compromise amounted with interest to $42,619.72 and the value of the balance to be paid her in annual instalments during the remaining life of the contract had a value of $71,167.20, but was dependent upon her writing articles. There was no proof that the Morning Telegraph was unable to pay the $42,619.72 that was due.

We think there has been no showing that either of these items gave rise to bad debts or losses. In respect to the $300,000 item the taxpayer received an assignment of a remainder interest in property held in trust for the life of Ann Augusta Thomas which was guaranteed to yield $300,000 when the remainder fell in. But no proof was adduced that it would not then yield $300,000 and by the terms of the separation agreement the guarantee would cease to operate if the taxpayer remarried. It seems impossible to treat such a guarantee either as a bad debt or a loss whatever may have been the financial condition of the estate of the guarantor prior to the compromise. The same considerations apply to the obligations of the Morning Telegraph Company for there was no proof that it was necessary to resort to the guarantee to secure full payment of the claims against the primary obligor. There was, therefore, neither a bad debt nor a loss.

█ For the reasons we have already given there was no bad debt which might be de-

ducted. But even if the obligations running to the taxpayer under the separation agreement had not been performed, the nonperformance would not, in our opinion, have resulted in "bad debts" within the statutory meaning of the term, but rather in losses arising from breaches of contract. Lewellyn v. Electric Reduction Co., 275 U. S. 243, 48 S.Ct. 63, 72 L.Ed. 262; Wadsworth Mfg. Co. v. Commissioner, 6 Cir., 44 F.2d 762. The provisions in the income tax laws allowing deductions for "bad debts" and for losses sustained during the taxable year are mutually exclusive. Spring City Foundry Co. v. Com'r, 292 U. S. 182, 54 S.Ct. 644, 78 L.Ed. 1200.

The best that the taxpayer can claim is that if her rights under the separation agreement be taken as a whole she was forced to compromise them for less than their value assuming that the obligor was solvent. But we are not persuaded that the taxpayer has proved any deductible loss even on that assumption. Had there been a loss it would not be deductible under the income tax acts because it did not arise "in any transaction entered into for profit."

Order affirmed.

L. HAND, Circuit Judge, concurs in separate memorandum.

L. HAND, Circuit Judge (concurring).

I concur, but I wish to state some doubts, which seem to me substantial, as to the propriety of taxing a widow upon the income of a trust fund, accepted by her during her husband's life, in exchange for alimony. The husband is confessedly taxable upon that income while he lives, and the wife is not; we are holding that the reverse is true after his death. In principle I find it very hard to support this change, because the income during the later period seems to me equally with that during the earlier, part of a single consideration. The husband's liability is only for their joint lives, which is always actuarially a shorter period than the life of either one. Ordinarily, therefore, the annual income will be less than what she would have accepted, if she were confined to the period during which he is liable. If it were practicable to continue the tax upon his estate after his death, I should therefore think that that was the proper way—he has given a quid pro quo measured by a less sum for a longer period. But I cannot see how this could be admin-

istered in practice. The income of the trust must be calculated as part of the husband's income, which, being dead, he cannot have; and it would not be possible even by impounding some part of his estate to provide for it. True, one could in that way secure the normal tax, but that is not enough; the actual tax could not even be calculated. I know that it is not a very good reason for taxing one person that it is impossible to collect the tax out of another, but we are continually admonished that the taxation is a practical matter, and here I am disposed to accept that as an adequate excuse. The result may be somewhat unfair before the law becomes fixed, but thereafter women who accept such settlements will be apt to take into consideration the fact that if their husbands die first, the tax will shift to them.