### ADRIANCE v. HIGGINS, Collector of Internal Revenue.

District Court, S. D. New York.
Oct. 19, 1939.

Sheppard & Seipp, of New York City (Henry G. Seipp, of New York City, of counsel), for plaintiff.

John T. Cahill, U. S. Atty., of New York City (Samuel Brodsky, Asst. U. S. Atty., of New York City, of counsel), for defendant.

LEIBELL, District Judge.

This is an action by the Administrator c. t. a. of the estate of John S. Adriance against the Collector of Internal Revenue for the Third District of New York to recover the sum of $49,467.20, or such lesser sum as he may be lawfully entitled to, with interest from March 3rd, 1936. It is alleged that the said sum was illegally and wrongfully exacted from the plaintiff by the defendant as a tax upon the estate of John S. Adriance. The defendant filed an answer and has now moved for judgment on the pleadings.

There are four causes of action pleaded in the complaint: The first, second and third relate to a separation agreement dated February 21, 1912, containing a trust of the security posted to assure the monthly payments under the agreement, and the fourth concerns a trust of the remainder of decedent's property created June 5, 1923. At the time of his death January 5, 1934, John S. Adriance was a resident and domiciled in the State of New York. His last will and testament, the date of which is not stated, was admitted to probate by the Surrogate's Court, New York County, on August 17, 1934, on which date Vanderpoel Adriance, Jr. was appointed Administrator c. t. a. of the Estate of John S. Adriance. Since the amount demanded in the fourth cause of action involves a claim

for refund equal to the entire sum paid by plaintiff, it will be considered first.

On June 5, 1923, John S. Adriance, as party of the first part, executed an instrument whereby he transferred and delivered all his real and personal property which he then had or might thereafter acquire, excepting only money then on hand and personal effects, to the Irving Bank-Columbia Trust Company, in trust, to pay the net income arising therefrom to or for his use or benefit during the term of his natural life and "after his death, to pay, transfer and deliver the said property and any unpaid or unapplied income thereof to such person or persons as may be lawfully entitled thereto, whether as heirs and next of kin of the said party of the first part or personal representatives or devisees or legatees under and by virtue of any Last Will and Testament of the said party of the first part."

The trust agreement was put into full force and effect. Subsequently the Irving Trust Company became the Trustee in place of the Irving Bank-Columbia Trust Company, and when the decedent died on January 5, 1934, the value of the trust fund was $653,382.90, as found and determined by the Commissioner of Internal Revenue. This sum was included by the Commissioner in the gross estate of the decedent and a tax assessed thereon. Plaintiff contends that it is not subject to an estate tax, asserting that the trust constituted an irrevocable transfer and that there was no reversionary interest in decedent's estate.

Section 302 of the Revenue Act of 1926 provides in part, that:

"§ 302 [§ 411]. Gross estate.

"The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, * * *

"(a) Decedent's interest. To the extent of the interest therein of the decedent at the time of his death;

\* \* \* \* \* \*

"(d) Revocable transfers. To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke, or where

the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. \* \* \*"

See, 26 U.S.C.A. § 411.

■ If this trust were revocable, creating a reversion in the decedent, the trust property would be the property of the decedent and, as such, properly included in his gross estate pursuant to § 302 (a). I am of the opinion that the trust was an irrevocable one, it could not be recalled, and that it created a contingent remainder in decedent's heirs at law rather than a reversion in himself. See, Engel v. Guaranty Trust Co., 280 N.Y. 43, 19 N.E.2d 673; Whittemore v. Equitable Trust Co., 250 N.Y. 298, 165 N.E. 454. The rule of these cases would seem to be that a trust, otherwise irrevocable, is not to be deemed as creating a reversion in the settlor when the only control the settlor retains over the corpus of the trust is the power of testamentary disposition.

■ However, the circumstance of irrevocability is not alone sufficient to exclude this trust from the provisions of § 302 (d) of the Revenue Act of 1926. The decedent, by retaining the right of testamentary disposition of the trust corpus, had the power to alter or amend its terms within the meaning of § 302 (d). Commissioner of Internal Revenue v. Chase Nat. Bank, 2 Cir., 82 F.2d 157, certiorari denied 299 U.S. 552, 57 S.Ct. 15, 81 L.Ed. 407. Provisions in subdivision (h) making subdivision (d) applicable to transfers whether made before or after the passage of the Act are not "repugnant to the due process clause of the Fifth Amendment [U.S.C.A.]" Porter v. Commissioner, 288 U.S. 436, 443, 53 S.Ct. 451, 453, 77 L.Ed. 880; Burnet v. Wells, 289 U.S. 670, 677, 53 S.Ct. 761, 77 L.Ed. 1439.

■ In Commissioner v. Chase Nat. Bank, supra, the decedent had set up a trust in 1920 which provided that she receive the income during her life and thereafter the corpus, together with any undistributed income, should be paid to her lawful descendants in such proportions as she should in her last will appoint—if she made no appointment the property should be distributed per stirpes. She never exercised the power of appointment, dying intestate on February 3, 1931. The Court held that the trust corpus was properly included in the decedent's gross estate, stating, 82 F.

2d at page 158: "We think subdivision (d) authority for the inclusion of the trust corpus in the decedent's gross estate. Up to the time she died she had the power to alter the proportions in which her descendants should take the property in accordance with the original terms of the trust instrument. She could have limited any, or all but one, of them to a nominal amount and given all of real value to one or to such of them as she pleased. Her death eliminated the possibility of any such change in the provisions of the deed of trust and made it certain that her lawful descendants would take the property in equal shares per stirpes. The power she reserved was not to change the trust provisions in a trivial way, but went right to the heart of them and gave the decedent a substantial though qualified control over the trust property until her death. Such a power to alter or amend the substance of the transfer by trust brought it within the scope of the decision in Porter v. Commissioner, 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880, and justified the inclusion of the property in the gross estate of the decedent. See Dort v. Helvering, 63 App. D.C. 98, 69 F.(2d) 836; Cook v. Commissioner (C.C.A.) 66 F.(2d) 995; Hoblitzelle v. United States (Ct.Cl.) 3 F.Supp. 331. The decedent, having the right to change the economic benefit, had the power to alter within section 302 (d) of the 1926 Act even though she could not benefit herself in a pecuniary way by the change. Witherbee v. Commissioner (C.C. A.) 70 F.(2d) 696. She lived several years after the act took effect and she was on notice of its provisions, retaining the reserved powers when she might have given them up to rid her estate of this tax liability. So there has been no denial of rights under the Fifth Amendment. Porter v. Commissioner (C.C.A.) 60 F.(2d) 673; Witherbee v. Commissioner, supra. Compare, Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 56 S.Ct. 70, 80 L. Ed. [62]. The distinction between this case and Helvering v. Helmholz, 296 U. S. 93, 56 S.Ct. 68, 80 L.Ed. [76], and White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L. Ed [80], lies in the fact that in neither of them was there any power to alter, amend, or revoke within the meaning of section 302 (d)."

The instant case seems even stronger for the defendant. The decedent retained not merely the power to apportion the shares of a class of distributees designat-

ed in the trust instrument, but complete testamentary distribution of the trust corpus. He could, if he so desired, have relinquished this power and divested himself of all control. He lived for more than seven years subsequent to the passage of the Revenue Act of 1926. I am of the opinion that the corpus of the 1923 trust was under § 302 (d) properly included in his gross estate and defendant's motion for judgment on the pleadings in respect to the fourth cause of action is granted.

The first three causes of action in the complaint depend upon the construction of a certain separation agreement made on February 21, 1912. Both the husband, John S. Adriance, and his wife, Mathilda R. Adriance, were parties to it. The third party was The Washington Trust Company of the City of New York referred to as "the trustee". It was primarily a separation agreement. The reasons for the agreement are set forth in an opening recital as follows: "Whereas divers disputes and marital differences have arisen between the parties of the first and second part, and have existed for a long time, by reason whereof they have heretofore separated, and for a considerable period of time have lived separate and apart from each other and intend to live apart in the future; and they having now agreed to settle their differences as to her maintenance and support as hereinafter set out; and the party of the third part having consented to act as Trustee under this agreement:"

The first two paragraphs of the agreement provide that the husband and wife shall live separate and apart, unmolested, and that neither will "institute any legal proceedings for the restitution of any marital rights."

The third paragraph is quoted as follows: "Third. Each of the parties of the first and second part shall have the right to dispose of his or her property and estate by Last Will and Testament as he or she shall see fit, and the other will not contest the same. The husband agrees that the estate of the wife shall go and belong to the persons who would be entitled thereto if the husband had died during her life time; and in the same way the wife agrees that the estate of the husband shall go and belong to the persons who would be entitled thereto if the wife had died during his life time. Each of them covenants and agrees to permit any Will made by

the other to be probated, or to allow administration to be taken out upon his or her estate, without objection or contest; and will, upon request, appear in any such proceeding and execute and deliver such appearance, consent and waiver as may be desired for the purpose of carrying the provisions of this paragraph into effect."

The fourth paragraph provides for a payment to the wife of a sum "out of which she shall pay all legal expenses connected herewith"—evidently for her attorney's fees.

Under the fifth paragraph the husband "agrees to pay, or cause to be paid" to the wife $4500 annually "during her life" in equal monthly installments of $375, on or before the 10th day of each month. The wife agrees that "the provisions made for her benefit under this agreement are sufficient for her support and maintenance in a proper and satisfactory manner". Then follows a provision to secure said payments which states:

"As security for such payment the party of the first part simultaneously herewith assigns, transfers and delivers to the Trustee above-named the following enumerated securities, (the receipt whereof is hereby acknowledged by the Trustee), to-wit:

"$45,000. par value, 5% Sinking Fund bonds of the United States Steel Corporation.

"5,000. So. Rway. Co. 1st Cons. 5% Gold Bonds maturing 1994.

"$50,000. par value Great Northern-Northern Pacific Collateral Trust 4% bonds, maturing 1921.

"Such securities shall be held in trust by the Trustee, and the income therefrom collected by it, and from such income it shall make the monthly payments above specified to the party of the second part so far as the income will pay the same. Any deficiency in said income to make such payments shall be made up by the party of the first part forthwith; and in default thereof, the Trustee shall have the right, and it shall be its duty, to convert such part of the principal as may be necessary into money, and to make such monthly payments therefrom. The securities making up the Trust Fund shall be subject to change from time to time upon the consent of the party of the first part and the attorney of the party of the second part, to be designated by her from time to time, and the Trustee; but the party of the first part agrees to maintain said Trust Fund at all times at the fair market

value of $100,000.00. Such monthly payments, without reduction for expenses or compensation of the Trustee, shall be made by the Trustee's check, drawn to the order of the party of the second part, and mailed to her at such address as she shall lodge with the Trustee."

The opening sentence of paragraph Sixth reads: "In consideration of the foregoing the party of the first part is hereby acquitted and discharged from all further liability in respect of the support and maintenance of the party of the second part so long as she shall live."

And she agreed that she would not contract any debts for which the husband or his estate might be answerable.

The concluding provision of paragraph Sixth is important to a determination of the issues herein and is quoted as follows: "It is further expressly agreed that upon the death of said Mathilda R. Adriance the Trustee shall at once pay over said Trust Fund to the said John S. Adriance, or if he shall then be dead, to his legal representatives."

The Seventh paragraph provides that if the husband be required to pay any debt contracted by the wife the Trustee shall refund the same to him "out of the income of said Trust Fund" and "deduct the same from the payments next going to" the wife.

The Eighth paragraph also has an important bearing upon the decision of this case. It provides: "Eighth. The party of the second part hereby covenants and agrees that she will at any time hereafter, upon request, join in, execute and deliver any deed, mortgage or transfer of real estate made or to be made by the party of the first part, without further compensation to her—it being expressly understood and agreed that the provisions made for her benefit under this agreement are accepted by her in full settlement, satisfaction and discharge of any and all claims of dower or rights of dower in any real estate now owned or hereafter acquired by him, as well also of any and all rights and claims of any kind on her part in respect of any and all property of any kind now owned by him or of which he may die seized and possessed."

The ninth paragraph provides for the execution at any time of such further instruments as might be required "for the purpose of carrying into effect the conditions and provisions of this agreement."

The tenth paragraph, after providing that the trustee accepted "the trusts confer-

red upon it under this agreement" and that the compensation of the trustee be paid by the husband, declared: "All the terms and provisions of this agreement shall bind the parties hereto, and their respective legal representatives, successors and assigns."

The separation agreement was legal and did not offend public policy. Winter v. Winter, 191 N.Y. 462, 84 N.E. 382, 16 L.R. A.,N.S., 710; Galusha v. Galusha, 116 N.Y. 635, 22 N.E. 1114, 6 L.R.A. 487, 15 Am.St. Rep. 453. It is expressly binding upon the personal representatives of the parties, and would have been an obligation of the decedent's representatives even though such a provision had not been inserted therein. Barnes v. Klug, 129 App.Div. 192, 113 N.Y. S. 325.

The first question to be considered is whether the corpus of the trust fund was properly included in the decedent's gross estate. The agreement clearly indicates that this fund was only security for the fulfillment of the primary purpose of the agreement, i. e., the payment of $4,500 per annum to the wife for her support and maintenance. Any deficiency in the income of the security to produce this annual return was to be "made up" by the husband. The support and maintenance of his wife was a legal obligation of the husband. As was said in Douglas v. Willcuts, 296 U.S. 1, 9, 56 S. Ct. 59, 63, 80 L.Ed. 3, 101 A.L.R. 391: "The creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered."

The agreement provided that the decedent should have a degree of control over the property itself. He could change the securities at any time with the consent of the wife's attorney and the trustee and he agreed to maintain the corpus at a fair market value of $100,000. And finally it was provided that on the death of the wife the trust fund should at once be paid over by the Trustee to the husband, "or if he shall then be dead, to his legal representatives." In Mutual Life Ins. Co. v. Armstrong, 117 U.S. 591, at page 597, 6 S.Ct. 877, 879, 29 L.Ed. 997, the Court defined the term "legal representatives" as follows: "The term 'legal representatives' is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his act or by operation of law." No remainder was created in any one. The reversion to the creator of the trust was clear. He did not limit his right to dispose of his interest in the corpus of the trust. He could have disposed of it by assignment, subject of course to the wife's life estate, or he could dispose of it by his last will and testament.

I am of the opinion that the corpus of the 1912 trust belonged to the decedent at the date of his death and was properly included in his gross estate. The Commissioner of Internal Revenue allowed $1,186.26 as a deduction from the $100,000 corpus of the trust. This $1,186.26 represented the value, as of the date of decedent's death, of trustee's commission of $2,020 which will be payable on the final accounting and distribution of the corpus of this trust when decedent's wife dies. Defendant's motion for judgment on the pleadings in respect to the first cause of action is granted.

In the second cause of action plaintiff asserts that only that portion of the corpus of the 1912 trust, over and above the value of the wife's life estate, is taxable, and that $46,198, the value of an annuity of $4,500 to the wife calculated as of the date of the husband's death plus $162 trustee's annual commissions on income, should be deducted from the $100,000 in determining the amount taxable. Under the agreement, the wife released not only her right to maintenance and support but her dower rights also and all other rights she might have "in respect of any and all property of any kind now owned by him or of which he may die seized and possessed." For tax purposes the monies payable to her under the separation agreement, subsequent to decedent's death, are deemed to be in lieu of dower, and are taxable to her as income. Thomas v. Commissioner, 2 Cir., 100 F.2d 408, 121 A.L.R. 469. Under § 302(b) of the Revenue Act of 1926, 26 U.S.C.A. § 411(b), the value of the gross estate of the decedent shall be determined at the time of his death by including the value of all property: "To the extent of any interest therein of the surviving spouse, existing at the time of the decedent's death as dower, curtesy, or by virtue of a statute creating an estate in lieu of dower or curtesy." Although strictly speaking the wife's annuity under the separation agreement is not dower or an estate created by statute in lieu of dower, the value of her annuity at the time of the de-

cedent's death is something which she in part received in place of her dower rights or any estate in lieu of dower. However it is not necessary to classify the value of her annuity as dower to make it taxable as part of decedent's estate under § .302(b) because I am of the opinion that the entire corpus of the trust should be included in the decedent's gross estate under § 302(a), for reasons stated in disposing of the first cause of action.

■ Further, it would seem that the value of the wife's annuity created by the separation agreement cannot be deducted from the gross estate as a claim against the decedent's estate under § 303(a) (1) of the Revenue Act of 1926, as amended by § 805 of the Revenue Act of 1932, 26 U.S.C.A. § 412(b) (5), which provided: "The deduction herein allowed in the case of claims against the estate, unpaid mortgages, or any indebtedness shall, when founded upon a promise or agreement, be limited to the extent that they were contracted bona fide and for an adequate and full consideration in money or money's worth. * * *"

Section 804 of the Revenue Act of 1932, which amended § 303(d) of the Revenue Act of 1926, 26 U.S.C.A. § 412(b) (5), provided: "For the purposes of this title [subchapter], a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'"

For estate tax purposes the statute expressly precludes any deduction of a claim against the estate which has as its consideration a release of dower. This would be so even if the agreement giving rise to the claim was made prior to the passage of the first estate tax on dower. § 402(b) of the Revenue Act of 1918, 40 Stat. 1097. Where the marriage giving rise to the inchoate right of dower took place prior to 1919 and the husband died subsequent to the taxing Act, her dower or statutory interest in his estate may be taxed as part of her husband's estate. Allen v. Henggeler, 8 Cir., 32 F.2d 69, certiorari denied 280 U.S. 594, 50 S.Ct. 40, 74 L.Ed. 642. There seems to be no good reason why the payments she receives in lieu of dower after his death should not likewise be taxable as part of his estate, even though the amount or value thereof may have been fixed or agreed to by an instrument executed by the

parties prior to the enactment of the taxing statute. The husband's death is the occasion which changes the inchoate right of dower to a consummate right and makes the tax statute applicable. It is the occasion of the "transfer" or "shifting of economic benefits" to which the Federal Estate Tax Law applies, as explained in the case of Crooks v. Loose, 8 Cir., 36 F.2d 571, 573.

■ Plaintiff asserts that the application of § 804 of the Revenue Act of 1932 to the instant case is unconstitutional under the due process provision of the Fifth Amendment to the Constitution, U.S.C.A. But § 804 was not a promulgation of new law, but rather a declaration of the law as it had previously existed. Empire Trust Co. v. Commissioner, 4 Cir., 94 F.2d 307. This is not an instance of an attempted retroactive application of the tax law to a completed transfer as in Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081. The 1912 trust was merely security for the fulfillment of the decedent's obligations under the separation agreement and the property was to revert to him or his legal representatives on the death of decedent's wife. Since it was part of his estate at the time of his death it was taxable under the law in effect at that time. I am of the opinion that defendant's motion for judgment on the pleadings in respect to the second cause of action should be granted.

■ For a third cause of action plaintiff contends that the expenses of administration of the 1912 trust, which will be necessarily incurred on the final accounting after the death of decedent's wife, constitute an allowable deduction. Plaintiff asserts that such expenses will amount to $2,000 "for court costs and attorneys' fees" and that the present value of such amount is $1186.26. How he arrives at the sum of $2,000 is not stated in the complaint. Just when the corpus of the 1912 trust will revert to the estate and be administered is in nowise determinable at this time. The reliance on an actuarial basis to determine the present worth of the $2,000 of expenses indicates that this expense cannot be deemed one which will occur in the time required for the ordinary course of administration of decedent's estate. § 303 (a) (1) of the Revenue Act of 1926, as amended by § 805 of the Revenue Act of 1932, 26 U.S.C.A. § 412, and Regulation 80, Articles 29 and 32 apply. The rule seems to be that only such expenses as would be incurred within

the time usually required for the administration of the decedent's estate are properly deductible, and that the expenses are limited "to such as are necessary to wind up administration of the estate and affect the estate as a whole." Bretzfelder et al. v. Commissioner of Internal Revenue, 2 Cir., 86 F.2d 713, 714; Estate of Peckham v. Com'r, 19 B.T.A. 1020. It is true that the Commissioner allowed as a deduction from the $100,000, the sum of $1,186.26, the value as of January 5, 1934, of the trustee's commission of 2% which will be payable on the distribution of the principal of the trust after the wife's death. Although the propriety of that allowance may be questionable in view of the Bretzfelder case, supra, and Regulation 80, Articles 29 and 32, it is not an issue on this motion and is not a binding precedent in respect to the claimed deductible expenses pleaded in the third cause of action. I am of the opinion that defendant's motion for judgment on the pleadings in respect to the third cause of action should be granted.

Accordingly, the defendant's motion is granted as to all four causes of action and the complaint is dismissed. Submit order on notice.