### BOWLES v. CARDINAL CUTLERY CORPORATION et al.

District Court, S. D. New York.

Jan. 29, 1946.

436

Callman Gottesman, of New York City, Chief Enforcement Atty., New York Metropolitan Operating Office, OPA, (John D. Masterton, Regional Litigation Atty. Region II, and William Sardell, Chief Opinion & Research Branch, both of New York City, on the brief), for plaintiff.

Conrad and Smith, of New York City (Samuel Rubin, of Brooklyn, of counsel), for defendant.

LEIBELL, District Judge.

Plaintiff, the Price Administrator, sues the corporate defendant, Cardinal Cutlery Corp., and two of its officers, George Bakalar, its president, and Joseph Blau, its treasurer, "for treble damages on behalf of the United States, pursuant to the provisions of Section 205(e) of Emergency Price Control Act of 1942" as amended, 50 U.S.C.A.Appendix, § 925(e). The complaint alleges:

"4. Defendant, Cardinal Cutlery Corp., at the times mentioned herein was engaged at 2688 Jerome Ave., Bronx, New York in the business of manufacturing knives and surgical instruments hereinafter called 'commodities' for which upon sales by defendant, maximum prices are and were established by the said Regulation.

"5. At all times hereinafter mentioned, defendants, George Bakalar and Joseph Blau, have been and still are president and treasurer, respectively, of the corporate defendant, and have participated actively in the management and conduct of the corporate affairs and business.

"6. Since about September 1, 1944 to the date of this complaint defendants have sold and delivered the commodities manufactured by them at prices in excess of the maximum prices established by the said Regulation. None of said sales was made to a person for use or consumption other than in the course of trade or business.

"That the foregoing transactions occurred more than six months after the date of approval and enactment of the Act.

"7. That by reason of the failure of the defendants to determine maximum prices for the commodities manufactured and sold as aforesaid, as required by the Regulation, the plaintiff is presently unable to allege the specific amount of such excess."

The prayer for judgment reads as follows:

"Wherefore, the plaintiff demands: Judgment on behalf of the United States against the defendants in a sum equal to three times the amount by which the prices charged for

the commodities sold by them exceeded the maximum prices established by Maximum Price Regulation No. 188 together with costs and disbursements."

All the defendants move to dismiss the complaint of the Price Administrator on the ground that it does not state a claim on which relief can be granted, Rule 12(b), Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c. In so far as the motion is based on the failure to allege specific sales and to demand judgment for a specific sum of money, the motion is denied. Bowles v. Pierce Watch Co., D.C. S.D.N.Y.;[1] Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566; Dioguardi v. Durning, 2 Cir., 139 F.2d 774.

The individual defendants, officers of the defendant corporation, who are alleged to have participated actively in the management and conduct of the corporate affairs and business and to "have sold and delivered the commodities manufactured by them at prices in excess of the maximum prices", also urge, in support of a motion to dismiss, that they are not individually liable for money damages. If the corporation was the "seller", then the officers of the corporation are not the sellers and cannot be held in money damages. Section 205(e) uses the terms "seller", "buyer" and "purchaser". The buyer is the purchaser. The seller has the commodities that are purchased and parts with them for the purchase price. The salesman is not the seller, he is an employee of the seller. An officer of the corporation is not the seller, even though he may fix an illegal price and personally negotiates the sale. The acts of the salesman or the officer may constitute a violation of the Price Regulation, for which he may be prosecuted under § 205(b), or enjoined under § 205(a). He is punished or enjoined because he is a violator. But because he is not the "seller" he is not liable in money damages under § 205(e). The "seller" is the corporation and the first sentence of § 205(e) of the Act authorizes an action "against the seller on account of the overcharge". The last sentence of § 205(e) also uses the word "seller", and supports this interpretation of the word "seller" as used in the first sentence of said section. "(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. * * * A judgment in an action for damages under this subsection shall be a bar to the recovery under this subsection of any damages in any other action against the same seller on account of sales made to the same purchaser prior to the institution of the action in which such judgment was rendered."

Section 205(e) as originally passed January 30, 1942, provided: "(e) If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, the person who buys such commodity for use or consumption other than in the course of trade or business may bring an action either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is the greater," etc. 56 Stat. 33.

Although the section, in its original form, did not specify against whom the action could be brought, it was fairly implied that the action would be against the "seller" who had made the overcharge. (Conference report No. 1658, p. 26, 77th Congress, January 22, 1942.)

However, some decisions of the District Courts under the original Act have held that officers of a corporation could be sued for damages under § 205(e). Several of the cases seem to have followed and cited with approval the holding in Brown v. Cummins Distilleries Corp., D.C., 68 F. Supp. 985. In that case Judge Miller referred to a related action, No. 584, which had been brought against the corporation and its stockholders in which he wrote an opinion reported in 53 F.Supp. 659. Judge Miller's opinion in 68 F.Supp. 986, states: "[Liability of Corporate Officers] This action presents one additional question not

---

[1] Case pending.

involved in Action No. 584, in that it attempts to impose liability upon the officers and directors of the Cummins Distilleries Corporation for sales made by that corporation in excess of the maximum prices established therefor. Ordinarily, such liability, if any, would be that of the corporation alone. However, Section 205(e) of the Emergency Control Act of 1942 imposes the liability prescribed by the Act upon 'any person' selling the commodity in violation of the maximum price. Section 302 of the Act defines the term 'person' as including both a corporation and its representatives. Since the complaint proceeds against the individual defendants as the representatives of the defendant corporation and alleges that they acted as its representatives in the sale and delivery of the whiskey and gin in question, it would appear for the purpose of the present motions that they are properly joined as defendants. Whether or not any individual defendant either as an officer or director participated in the sales complained of is a question of fact of such detail that the Court would prefer to receive evidence upon the issue involved rather than to dispose of the matter in a summary proceeding upon affidavits."

The reasoning of Judge Miller was followed in Bowles v. Yankee Brewing Co., D.C., 62 F.Supp. 588 and Bowles v. Lecht, 68 F.Supp. 988.

Section 302, subd.(h) reads as follows: "(h) The term 'person' includes an individual, corporation, partnership, association, or any other organized group of persons, or legal successor or representative of any of the foregoing, and includes the United States or any agency thereof, or any other government, or any of its political subdivisions, or any agency of any of the foregoing: Provided, that no punishment provided by this Act shall apply to the United States, or to any such government, political subdivision, or agency."

The expression "legal successor or representative of any of the foregoing" means the legal successor in interest of such person, or the person who stands in the place of the seller, such as the executor or administrator of a deceased seller or the trustee in bankruptcy of any insolvent seller. The adjective "legal" is related to both "successor" and "representative".

In Adriance v. Higgins, D.C., 30 F.Supp. 70, 74, the following definition of the term "legal representative" is quoted from Mutual Life Insurance Co. v. Armstrong, 117 U.S. 591, at page 597, 6 S.Ct. 877, at page 879, 29 L.Ed. 997: " 'The term "legal representatives" is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his act or by operation of law.' " See, also, Pittel v. Fidelity Mutual Life Ass'n, 5 Cir., 86 F. 255.

The Price Control Act evidently intended that any such legal successor to the business, or the legal representative of a former owner of the business, should be considered a "person" wherever that term is used in the Act. The definition of a "person" in § 302(h) was not changed when the Act was amended June 30, 1944. But the amendment of § 205(e) clearly specified that the action for money damages was to be against the "seller". It did not provide that the action for money damages could be maintained against the "person" who violated the Act in making the sale. Our main concern therefore is with the meaning to be given to the word "seller" —not the word "person" as used in § 205(e).

Section 302(a) of the Act states: "(a) The term 'sale' includes sales, dispositions, exchanges, leases, and other transfers, and contracts and offers to do any of the foregoing. The terms 'sell', 'selling', 'seller', 'buy', and 'buyer', shall be construed accordingly."

General Maximum Price Regulation (Feb. 1, 1944) issued by the Office of Price Administrator contains the following definition in § 1499.20:

"(r) 'Sell' includes sell, supply, dispose, barter, exchange, lease, transfer, and deliver, and contracts and offers to do any of the foregoing. The terms 'sale,' 'selling', 'sold,' 'seller,' 'buy,' 'purchase,' and 'purchaser,' shall be construed accordingly. Nothing in this General Maximum Price

Regulation shall be construed to prohibit the making of a contract to sell a commodity or service at a price not to exceed ·the maximum price at the time of delivery or supply.

"(s) 'Seller' includes the seller of any commodity or service. Where a seller at retail makes sales or supplies services through more than one selling unit, other than salesmen making sales at uniform prices, each such separate place of business of the seller shall be deemed to be a separate seller. Where a seller other than at retail makes sales or supplies services through more than one selling unit, all selling units whose prices for most of the commodities they sell have customarily been determined centrally by the same office, shall be deemed to be a single seller; but where a seller has by charging different prices for a commodity at his selling units established different classes of purchasers, he will have different maximum prices for the different selling units. For the purposes of § 1499.16 of this regulation, the owner of a business shall be considered the seller regardless of the number of separate places of business he owns."

The reference in the last sentence above quoted to § 1499.16, is to a section relating to the licensing of a seller under Licensing Order No. 1.

These definitions affirm the distinction between the "seller" and a "salesman". The "seller" is the owner of the business, in the present case the corporation, Cardinal Cutlery Corp. The "seller" is not an officer of the corporation, or one of its salesmen.

Plaintiff's attorney in the concluding point of his final brief argues that the liability of the individual defendants is not because they are "officers or agents as such, but because they participated in the overceiling sales and therefore under the facts and under the law they must be considered as sellers". That is another way of stating that any person who violates the statute or regulations by participating in the over-ceiling sale is liable for money damages under § 205(e). I do not agree with that construction and the Act does not so provide. It seems to me that § 205(e) relates to overcharges of the seller, i. e., of the person whose commodity is sold, and logically the suit would be against the seller to recover the overcharge or statutory damages which he has received and pocketed.

The OPA has set up a master set of regulations (G.M.P.R.) which the seller of a commodity or service must follow in determining his sales price. G.M.P.R. § 1499.2 contains the general provisions relating to maximum prices for commodities and services. There are also regulations designed for particular industries. G.M.P.R. fixes as the seller's maximum price the highest price charged by the seller during March 1942 for the same commodity or for a similar commodity; but if the maximum price cannot be thus determined then the seller's maximum price is limited to "the highest price charged during March 1942 by the 'most closely competitive seller of the same class'" for the same or a similar commodity. Throughout the regulation the "seller" is referred to many times. The "seller" is the person whose commodity is being sold or offered for sale; the "seller" is the person who is charged with the duty of fixing the price of his commodity in compliance with the Regulations; the "seller" is charged with the duty of reporting to the OPA maximum prices which he determines by a method not specifically authorized; a distinction for some purposes is made between "sellers at retail" and "sellers at wholesale". § 1499.11 provides that "Every person selling commodities or services for which upon sale by that person, maximum prices are established by this General Maximum Price Regulation shall" preserve records relating to his March 1942 prices. And "every person selling commodities" for which maximum prices are established is required to keep current records also.

There is no need to summarize or analyze all the other sections of the General Maximum Price Regulation in which the word "seller" is used. They indicate that the seller is the person who is in the business of selling a commodity or service at wholesale or retail; that he is the person

who must make reports to the OPA and fill out the answers to the questions on the numerous forms furnished by the OPA, some of which are set forth in the Appendix to § 1499.24 of the General Maximum Price Regulation. On some of the forms the words "Name of Seller Reporting" or "Name of Seller or Authorized Agent" appear beneath the dotted line reserved for a signature.

I have examined many pages of the Congressional Record reporting the debates in the House of Representatives and in the Senate, when the amendment of Section 205(e) was under consideration in June of 1944. The Congressional Record shows that the members of the national legislature, in discussing suits against the seller for treble damages under Section 205(e) used the word "seller" interchangeably with "retailer" (Cong.Record 78th Cong. 2d Sess. p. 5969), with "merchant" (pages 5476 and 5533), with "storekeeper" (page 5540). "Seller" was also coupled with the word "landlord" (page 5380); and it was clearly stated that "seller" was not to include a "salesgirl" (page 5542). Senator Radcliff in the course of the debates stated (page 5470): "no overcharge should be pocketed and retained by the seller irrespective of whether or not he obtains it in good faith". Senator George in referring to the remedy of the purchaser remarked (page 5476): "that he may sue the merchant of whom he bought it". There does not appear to be any discussion or any statement in the course of the debates which assumed a personal liability in money damages on the part of any officer of a corporation who sells a commodity of the corporation in violation of the ceiling price.

If as a result of the experiences of the OPA in enforcing Section 205(e) it appears to Congress to be desirable to permit an action for the overcharges against officers of a corporation, Section 205(e) may be amended to that effect. A strong argument could be made in favor of holding the officers of a corporation personally liable in an action by a purchaser where the corporation has become financially unable to respond in damages. I have in mind a case that came before me October 31, 1944. A corporation was sued by the OPA for overcharges of $18,348.55. It did not defend and permitted an inquest to be taken resulting in a judgment for $55,045.65, three times the amount of the overcharge. The attorney for the corporation stated that the corporation was out of business and would not defend. Bowles v. Caiden & Co., D.C.S.D.N.Y.[2]

It may be that a personally owned corporation—a corporation in which a few stockholders own all the stock, hold the principal offices and control the Board of Directors—should not be used as a shield to protect the individuals who really own the corporation and run the business from personal liability in damage suits under Section 205(e). However, that is a matter of policy for Congress to determine and not for the Court to attempt to enforce without a clear mandate to that effect.

The motion of the two individual defendants to dismiss the complaint as to them is granted, for the reason that they are not liable under § 205(e) of the Act.

The corporate defendant is entitled to have the complaint herein supplemented and made more specific, through a Bill of Particulars of the sales which are alleged to have been made in violation of the provisions of the Emergency Price Control Act and of Maximum Price Regulation No. 188. Rule 12(e), F.R.C.P. The corporate defendant's time to answer will be extended to 20 days after the Bill of Particulars is served. If, in order to serve a Bill of Particulars, the plaintiff will require an examination of the corporate defendant and its records, concerning the matters involved in the action and relating to the claim of the plaintiff, the Bill need not be served until plaintiff has applied for and has completed such examination. Rule 26, F.R.C.P.

Settle order accordingly.

---

[2] No opinion for publication.