## AUDITOR OF PUBLIC ACCOUNTS OF ILLINOIS v. IZATT.

### No. 10810.

United States Court of Appeals
Seventh Circuit.

July 1, 1953.

Latham Castle, Atty. Gen., and William C. Wines, Asst. Atty. Gen., Raymond S. Sarnow, A. Zola Groves and Edward M. White, Asst. Attys. Gen., of counsel, for appellant.

Maurice J. Walsh and Morris A. Haft, Chicago, Ill., for appellee.

Before DUFFY, FINNEGAN and SWAIM, Circuit Judges.

FINNEGAN, Circuit Judge.

On February 19, 1952, The Auditor of Public Accounts of the State of Illinois, for the use of the People of the State of Illinois, filed suit in the United States District Court for the Northern District of Illinois, Eastern Division, against Dearborn Packing Company, an Illinois Corporation, and Russell A. Izatt, its president, Julius Lopin,

its treasurer, and Alvin Rubens, its secretary. The plaintiff-appellant sought to recover damages for overcharges paid by the State of Illinois to certain of the defendants, under the provisions of the Defense Production Act of 1950, Title 4, sec. 409(c), 64 Stat. 811, 50 U.S.C.A.Appendix, § 2109 (c). Each of the individual defendants moved for the dismissal of the counts in the complaint seeking recovery against him upon the following grounds:

"A—The complaint does not disclose in any manner, shape or form any right in the plaintiff to maintain its action herein, nor does the complaint show or allege any obligation or duty (owed) by this defendant to the plaintiff."

"B—The action was not commenced within one year from the date of the occurrence of the alleged violations set forth in plaintiff's complaint; that section 2109 title 50 United States Code Annotated (App.) paragraph (c) restricts a plaintiff entitled to bring an action under such section to the commencement of a good cause of action within one year from the date of the occurrence of the alleged violation of such act."

"C—This defendant moves the court pursuant to the general law, to dismiss the complaint filed herein against him on the ground that said complaint is substantially insufficient in law on its face."

On November 25, 1952, the trial court allowed the motions of the individual defendants to dismiss the complaint and ordered that they be dismissed from the action. The plaintiff prosecutes this appeal to reverse such finding and order. The cause is still pending in the District Court against the corporate defendant, Dearborn Packing Company.

It is sufficient for the purposes of this appeal to say that the complaint charged that the defendant corporation acting through the individual defendants, as its officers and agents, agreed to sell and actually did sell to the State of Illinois meat and meat products, and that the State bought and paid overceiling prices for such products to be used and consumed by inmates of State institutions.

The sole question presented by this record is: Are the officers of the corporation that makes sales at overceiling prices, and who actually participate in and bring about such sales, liable as individuals, with the corporate seller, under the Defense Production Act of 1950?

The section of the Defense Production Act of 1950 involved in this proceeding is subsection (c) sec. 409 of the Act of September 8, 1950, 64 Stat. 811, as amended, 50 U.S.C.A.Appendix, § 2109(c). It now reads as follows:

"If any person selling any material or service violates a regulation or order prescribing a ceiling or ceilings, the person who buys such material or service for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation, except as hereinafter provided, bring an action against the seller on account of the overcharge. In any action under this subsection, the seller shall be liable for reasonable attorney's fees and costs as determined by the court, plus whichever of the following sums is greater: (1) such amount not more than three times the amount of the overcharge, or the overcharges, upon which the action is based as the court in its discretion may determine, but in no event shall such amount exceed the amount of the overcharge, or the overcharges, plus $10,000 or (2) an amount not less than $25 nor more than $50 as the court in its discretion may determine: *Provided, however,* That such amount shall be the amount of the overcharge or overcharges if the defendant proves that the violation of the regulation or order in question was neither willful nor the result of failure to take practicable precautions against the occurrence of the violation. For the purposes of this section the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable ceiling."

The legislative history of the cited provision of Defense Production Act of 1950 will be of material assistance in the solution of the problem presented by this proceeding. The subsection (c) finds its origin in and is taken from the Emergency Price Control Act of June 30, 1942, 56 Stat. 34, Title II, sec. 205, subsection (e) of that Act provides that if any person selling a commodity violated a regulation prescribing a maximum price *the person who buys such commodity for use or consumption, other than in the course of trade or business may bring an action* either for $50 or for treble the amount by which the consideration exceeded the applicable maximum price, whichever is greater, plus reasonable attorney's fees and costs as determined by the court. "For the purposes of this section the payment or receipt of rent for defense-area housing * * * shall be deemed the buying or selling of a commodity".

We have italicized the provisions authorizing the buyer to bring an action in order to emphasize the fact that as originally written the subsection did not designate positively the person or persons against whom the buyer might proceed in his action. The inference, of course, was plain that the action should be against the person or persons who sold the commodity in violation of the regulation prescribing the maximum price.

On June 30, 1944, Title II, sec. 205, subsection (e) of the Emergency Price Control Act of 1942 was amended so as to read:

"If any person selling a commodity violates a regulation, order, or price schedule prescribing a maximum price or maximum prices, *the person who buys such commodity for use or consumption other than in the course of trade or business may, within one year from the date of the occurrence of the violation,* except as hereinafter provided, *bring an action against the seller on account of the overcharge.*

"In such action the seller shall be liable for reasonable attorney's fees and costs as determined by the court plus whichever of the following sums is the greater (1) such amount not more than 3 times the amount of the overcharge or the overcharges upon which the action is based as the court in its discretion may determine, or (2) an amount not less than $25 nor more than $50 as the court in its discretion may determine: Provided, however, that such amount shall be the amount of the overcharge or overcharges or $25 whichever is greater if the defendant proves that the violation of the regulation order or price schedule in question was neither wilful nor the result of failure to take practicable precautions against the occurrence of the violation.

"For the purposes of this section the payment or receipt of rent for defense area housing accommodations shall be deemed the buying or selling of a commodity as the case may be, and the word 'overcharge' shall mean the amount by which the consideration exceeds the applicable maximum price." *58 Stat. 640.*

We have again italicized portions of the subsection to emphasize that this amendment of 1944 pointed out that the suit of the overcharged buyer should be brought "against the seller on account of the overcharge."

On September 8, 1950, the Defense Production Act of 1950, as heretofore cited, was passed, 64 Stat. 798, et seq., 50 U.S.C.A. Appendix, § 2061, et seq. The former subsection (e), sec. 205, title II of the Emergency Price Control Act of 1942 was placed therein as sec. 409, subsection (c) of title IV, 50 U.S.C.A.Appendix, § 2109(c). It was amended on July 31, 1951, 65 Stat. 136, by striking therefrom the provisions limiting the recovery in a suit by an overcharged purchaser to the amount of the overcharge plus $10,000, and also by adding subsections (d) and (e). These additions are immaterial to the consideration of the question presented by this record.

The foregoing resume of the history of the legislative enactment known as title IV, sec. 409, subsection (c), of the Defense Production Act of 1950, 50 U.S.C.A. Appendix, § 2109(c) establishes in our opinion that since the Act of June 30, 1944, the buyer of a commodity, for which a maximum price has been prescribed, who has

been overcharged in his purchase thereof, may bring a civil action for damages for such violation of the prescribed maximum price against the seller of the commodity and against the seller alone. The subsection does not give such a purchaser the right to sue the clerk or other agent of the seller. In the case at bar, the purchaser, The State of Illinois, having purchased the meat and meat products involved for use and consumption by the patients or inmates of State institutions, and having paid a price over and above the prescribed maximum for such commodity, is entitled under the terms of the subsection to sue the Dearborn Packing Company, the seller, for the damages provided. for in the Defense Production Act. The agents and officers of the seller are not, under the terms of the statute, liable to respond for such damages in such an action.

This precise question, so far as we are able to determine, has not been passed upon by any federal court of appellate jurisdiction. However, cases in the District Courts of the United States in New York, California and Missouri have also reached our conclusion. See Bowles v. Cardinal Cutlery Corp., D.C.N.Y., 69 F.Supp. 435; Porter v. Schaefer, D.C.Cal., 69 F.Supp. 1013; and United States v. Koch Bros., Mo., 109 F.Supp. 540. Compare also the opinion in Cochran v. Nelson, 1946, 26 Wash.2d 82, 173 P.2d 769, where the point is considered and passed upon.

In our historical resume we have included the provisions of the Emergency Price Control Act of 1942, 56 Stat. 34, and its amendment in June 1944, 58 Stat. 640, in reference to suits for treble damages arising from the payment or receipt of excess rent for defense area housing accommodations. Such provisions are not found in the Defense Production Act of 1950, because on June 30, 1947, 61 Stat. 193, 50 U.S.C.A.Appendix, § 1881 et seq. an act relating to maximum rent on housing accommodations was passed by Congress which embodied the provisions of the Emergency Price Control Act, as amended in 1944.

The Act of 1947, 61 Stat. 199, provides that any person who demands, accepts or receives any rent payment in excess of the maximum prescribed under the Act shall be liable to the person from whom he demands, accepts or receives such rent, etc. In other words, the language of the act is very different from that used in reference to the purchase of commodities above ceiling prices in the Emergency Price Control Act. Anyone who demands, accepts or receives rent in excess of the prescribed maximum is liable to the person from whom he demands, accepts or receives the excess rent. On the other hand, as we have heretofore pointed out, the purchaser of a commodity for a price in excess of the maximum prescribed may recover in a civil action for damages against only the seller of such commodity.

Consequently, cases involving treble damages for rent violations have been disregarded as having no decisive value in the solution of the problem presented by this record.

The judgment of the District Court is affirmed.